**UNITED STATES, Appellee,**

v.

**Captain (0–3) George F. FLOWERS, SSN 249–76–6330, United States Army, Appellant.**

**CM 436746.**

U. S. Army Court of Military Review.

26 April 1979.

Captain Paul T. Allen, Jr., JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adam-

kewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Grifton E. Carden, JAGC.

Captain Stephen P. Henderson, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Captain Robert D. Newberry, JAGC.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

FELDER, Judge:

At Fort Polk, Louisiana, Captain (Chaplain) George F. Flowers was arraigned before a general court-martial on seven criminal charges but was convicted of three specifications. The convening authority approved the conviction of only two charges, to wit: signing a false official document and making a false official statement in violation of Article 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907. The court members sentenced the appellant to be dismissed from the service and the convening authority approved the sentence. We are reviewing this case pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

It is asserted initially by the appellant that the court-martial which tried him was jurisdictionally deficient because the convening authority delegated to the staff judge advocate the power to excuse court members without consulting with him. Signed by the convening authority is a document inserted in the record as an appellate exhibit that states:

I hereby delegate to the Staff Judge Advocate, 5th Infantry Division (Mechanized) and Fort Polk, Fort Polk, Louisi-

ana my authority to excuse detailed members from attendance at courts-martial for good cause.

Although the above authorization is silent as to when during criminal proceedings the staff judge advocate may employ this authority to excuse court members, another exhibit explains that it should be exercised only prior to assembly. The staff judge advocate urged the convening authority to delegate to him the power to excuse court members because of convenience. His reason follows:

Frequently members detailed to general and special courts-martial have good reason to request excusal from attendance at court for specified periods. The requests for excusal are often not submitted until after the individual has been notified of a date when he must attend a court session and this requires very short notice in communications with the convening authority

In this case, the staff judge advocate excused one of the seven court members prior to assembly because of the demands placed upon him as operations officer in preparing for a division command post exercise. The trial judge ruled that the excusal was for good cause. The defense counsel argued at trial that since under Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2),[1] the convening authority must personally detail court, members best qualified to serve, (*United States v. Ryan,* 5 M.J. 97 (C.M.A. 1978)), he alone is authorized to relieve them.

■ Congress specifically intends for the convening authority to personally excuse court members after assembly[2] (*see United States v. Allen,* 5 U.S.C.M.A. 626, 640, 18

---

1. When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.

2. No member of a general or special court-martial may be absent or excused after the court has been assembled for the trial of the accused except for physical disability or as a result of a challenge or by order of the convening authori-

ty for good cause. Article 29(a), UCMJ, 10 U.S.C. § 829(a); *see* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 41d(4). Good cause contemplates a critical situation such as emergency leave or military exigencies, as distinguished from the normal conditions of military life. The determination as to what constitutes good cause rests within the discretion of the convening authority. *Id.* at 37b.

C.M.R. 250, 264 (1955) (separate opinion)), but regarding the excusal of them before assembly, its intentions are not manifested. The President, however, pursuant to his procedural rulemaking power under Article 36, UCMJ, 10 U.S.C. § 836, declares that if, before the meeting of the court, it appears to a member that he should not sit because of legal disqualification or for any other reason except physical disability, he will bring the matter to the attention of the convening authority. If the member fails to obtain authorization for his absence from the convening authority, he perhaps commits a military offense but the trial may proceed if a quorum is present. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraphs 41c and d(3) [hereinafter cited as MCM, 1969 (Rev)]. However, if the accused voices objection to the unauthorized absence of a member before assembly, the proceedings must cease and the matter brought to the attention of the convening authority. By objecting, he "preserve[s] his right to be tried by a court composed of members appointed by the convening authority not lawfully absent or excused." *United States v. Allen, supra,* at 640, 641, 18 C.M.R. at 264, 265; *United States v. Cross,* 50 C.M.R. 501, 502, 503 (ACMR 1975). Therefore, the error asserted in this case is not one of jurisdictional dimension.

In *United States v. Allen, supra,* at 639, 645, 646, 18 C.M.R. at 263, 269, 270, Judge Brosman in the principal opinion and Judge Latimer writing the dissent, both agree that it is perfectly permissible for the convening authority to delegate to his staff judge advocate the power to excuse members for good cause prior to assembly.[3] Judge Latimer's personal view is expressed thusly:

A staff judge advocate has, by regulation, the authority to carry out the plans and policies of his commander once they are announced, and this would include the power to determine the conflicting inter-ests between a selected officer's basic duty and the duty of being a member of a court-martial. . . . Certainly, I believe we are erecting unnecessary obstacles to the primary responsibility of a commander to hold he must personally approve every request by a court-martial member to be excused from sitting on a particular case. Particularly would that be true under wartime conditions as he may be some distance removed from the situs of the court-martial, means of communication may be clogged, the officers may be scattered, and more important duties may be fully occupying his time. Even during peacetime, he should be permitted to rid himself of those administrative duties which are not specifically made nondelegable by military law. Only if I were to find that Congress or the President denied a commanding officer the authority to delegate the power to excuse members of the court before arraignment, would I prevent him from passing that burden on to his staff judge advocate. Accordingly, I would find that the plan adopted here was not prohibited by the Code or the Manual, whether it was operated personally by the convening authority or by the staff judge advocate.

Even though a staff judge advocate may excuse court members, we must recognize the more important statutory principle that the basic composition of a court-martial must be determined by the convening authority. Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2). When that determination is made by the staff judge advocate or anyone other than the convening authority, error is committed. Thus, where the staff judge advocate excuses fifty-percent of the court members and where the military judge excuses forty-percent of them, the United States Court of Military Appeals has held that such reductions interfere with the statutory responsibility of the convening authority and the concomitant right of the

---

3. Chief Judge Quinn believes that the power to excuse from attendance of a court-martial is an integral part of the power to select. It may actually control the membership of the court.

Hence, the power to excuse should be exercised personally by the convening authority. *United States v. Allen,* 5 U.S.C.M.A. 626, 639, 640, 18 C.M.R. 250, 263, 264 (1955) (separate opinion).

accused to a court which reflects the discretion of proper authority. *United States v. Colon,* 6 M.J. 73, 75 (C.M.A.1978); *United States v. Allen, supra,* at 638, 18 C.M.R. at 262.

In the case at bar, however, the staff judge advocate excused one of the seven members detailed to determine the appellant's guilt or innocence. A reduction in the membership of less than fifteen percent, in our judgment, did not disturb the basic composition of the court as selected by the convening authority. Therefore, we find no error in this regard.

■ The convictions against the appellant stem from his signing of his Officer Record Brief, DA Form 4037, which contains the false statement that he received a graduate degree from Northwestern University, and the making of the same entry on his Statement of Personal History, DD Form 398. The appellant now maintains that the conviction for making a false entry on his Statement of Personal History can not be affirmed because the form is not an official statement. He claims it lacks officiality because the Government did not prove either that the statement was delivered to a governmental agency for action (*United States v. Hawkins,* 33 C.M.R. 647 (NBR 1963)) or that the appellant was under a duty to make the statement. *United States v. Singley,* 23 C.M.R. 707 (AFBR 1956).

Precedent disposes of this issue summarily. The decision in *United States v. Osborne,* 9 U.S.C.M.A. 455, 26 C.M.R. 235 (1958) makes it explicit that an ". . . accused could most certainly be prosecuted for any and all false statements entered in his Personal History Statement, or any other official statement." *See United States v. Geib,* 9 U.S.C.M.A. 392, 26 C.M.R. 172 (1958) (dictum) cited in *United States v. Cummings,* 3 M.J. 246, 247 (C.M.A.1977); and *United States v. Brooke,* 6 C.M.R. 409 (ABR 1952). While Chief Judge Quinn and Judge Ferguson disagree with Judge Latimer regarding other matters in *Osborne,* they concur that a military person has a duty to correctly fill in required official

forms. Judge Latimer expatiates this principle further in his dissenting opinion:

It is quite necessary to a properly functioning military establishment that subordinates be required to furnish certain information to those in authority, under pain of violating Article 107, Uniform Code of Military Justice, 10 USC § 907. . . . Subjects such as security clearance, assignments, pay and allowances, fraudulent enlistment, [one's future value to the service,] and many others are dependent upon the information furnished by members of the military services. Therefore, when a superior's inquiry concerning the correctness of official entries contained in a serviceman's personnel files is directed to him, he has a duty not to furnish false information. He may rely on his privilege and remain silent, but if he speaks he must tell the truth. The maintenance of personnel records is a continuous task, . . . . .

It must indeed be a strange concept which underlies the principle that a serviceman may with impunity falsify . . entries in his official records. For my part I prefer to believe that Congress, when it enacted Article 107 of the Uniform Code of Military Justice, 10 USC § 907, intended to hold service personnel to a higher standard. *Id.* at 457, 458, 26 C.M.R. at 237, 238.

■ We shall now address the appellant's contention that the prosecution did not show he delivered his Statement of Personal History, with the false entry, to a governmental agency. Since the form was maintained as a part of his Military Personnel Records Jacket and extracted therefrom for the purpose of prosecution, we, like the trial court members, are justified in concluding that the form was either submitted by the appellant or he caused it to be submitted to the custodian of his personnel records. The record of trial is void of convincing evidence to the contrary.

■ Likewise, the appellant's twin complaints that the charge fails to state an offense because it does not allege to whom the false statement was made and the trial

judge erred by neglecting to instruct the court that the statement must have been made to someone are without legal basis. These complaints were not raised at the trial.

The essence of Article 107, UCMJ, 10 U.S.C. § 907 is that it is a crime for a service member, with intent to deceive, to knowingly sign a false official document or make a false official statement. The following specification, upon which the appellant was arraigned, embraces all the elements of the offense and identifies the nature of his criminal activity:

> Specification 2: In that Captain George F. Flowers, US Army, Headquarters Company, Headquarters Command, 5th Infantry Division Mechanized and Fort Polk, did, at Fort Polk, Louisiana, at sometime after September 1975, with intent to deceive, make an entry of his DD Form 398, Statement of Personal History, an official statement, to wit: from 1973 to 1975 he attended Northwestern State University and received an M. Education Degree therefrom, which statement was false, in that he had never attended nor received a degree therefrom, and was then known by the said Captain George F. Flowers, to be so false.

We believe the specification passes the time-honored test when attacked on appeal, that is, "it is enough to withstand a broadside charge that . . . [it does] not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification." *United States v. Whyte,* 1 M.J. 163, 164 (CMA 1975); *United States v. Sell,* 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953); *see United States v. Reid,* 12 U.S.C. M.A. 497, 502, 31 C.M.R. 83, 88 (1961).

Similarly, the instructions given by the trial judge provide sufficient legal guidance for the court members to reach an informed verdict. He tracked the specification closely in charging the court concerning the elements of the offense; he defined the terms "intent to deceive;" and he explained that an entry placed by an individual on his Statement of Personal History is an official statement when properly filed in his Military Personnel Records Jacket. Under these circumstances, no error flowed from the failure to allege or instruct on the person to whom the false official statement was made.[4]

We are moved to commend all those who were involved in the processing of this case. A criminal trial is inherently an unfortunate and unpleasant experience, especially so when a man of the cloth is the accused. This is a difficult case that demanded uncommon judicial skills to try. The record of trial consists of seven volumes. Many complex legal issues were correctly resolved at the trial level, eliminating the need to address them on appeal. Captain Flowers was stationed in Bamberg, Germany, where one of the Article 107 offenses was committed, but the charges were preferred at Fort Polk, Louisiana. The administrative task of securing chosen defense counsel from Germany; summoning civilian and military witnesses from Europe and throughout the United States, and arranging for their travel and convenience was overwhelming. Yet, the record reflects everyone involved in this case, including lay, paralegal and legal personnel, from the initial investigation to action by the convening authority to argument before this Court, shouldered their burden with superb resourcefulness and objectivity.

The findings of guilty and the sentence are affirmed.

Senior Judge MITCHELL and Judge DRIBBEN concur.

---

4. Indeed the model specification of the MCM, 1969 (Rev), paragraph 65, Appendix 6, includes the omitted averment. Since the model specification is suggestive and not mandatory, the failure to strictly follow its structure in this case is not fatal.