UNITED STATES, Appellee

v

FLOYD A. OSBORNE, Staff Sergeant,
U. S. Air Force, Appellant

9 USCMA 455, 26 CMR 235

No. 10,993

Decided July 11, 1958

*Major George M. Wilson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

### Opinion of the Court

HOMER FERGUSON, Judge:

Prior to the bringing of the charges with which we are presently concerned, accused had been tried by a general court-martial on three specifications of presenting false travel vouchers, in violation of Article 132, Uniform Code of Military Justice, 10 USC § 932, and had been acquitted. Nonetheless, pursuant to certain Air Force Circulars, accused was interviewed for the purported purpose of obtaining personal factual background for higher authorities. In the course of this interrogation the suspicions of the interviewing officer were aroused and as a consequence a full investigation was ordered. Thereafter, the accused was interviewed by his commanding officer, and, after appropriate Article 31 (Code, supra, 10 USC § 831) warning, made the statements which are now before us. The statements were covered by specifications 5 and 6 and charged the accused with making false official statements, with intent to deceive, in violation of Article 107, Uniform Code, supra, 10 USC § 907. (The statements in question denied any prior record of civilian arrests and military courts-martial.) Accused was convicted and, as to the specifications which concern us, intermediate appellate bodies have affirmed.

We granted upon the issue as to whether or not accused's statements were official statements and, therefore, within the purview of Article 107. In United States v Aronson, 8 USCMA 525, 25 CMR 29, we stressed that every intentional false statement to a law enforcement agent does not necessarily

456

fall within the scope of Article 107. In amplification we said:

"The situation here, therefore, is not at all comparable to one in which a person suspected or accused of a crime unrelated to any duty or responsibility imposed upon him gives a statement to a law enforcement agent investigating the alleged offense. In the latter instance the agent has no right or power 'to require the statement' from the accused . . . And the accused has no obligation whatsoever to give the statement to the agent. From the accused's standpoint, therefore, the statement has no officiality. Moreover, from the standpoint of the Government the statement, however false, is hardly calculated to pervert the function of the investigating agency . . . Manifestly, therefore, there is no 'perversion' of the Government's criminal investigative function. Whatever offense the accused might commit by lying under these circumstances, his statement is not 'official' within the meaning of Article 107."

To the same effect see: United States v Washington, 9 USCMA 131, 25 CMR 393; United States v Arthur, 8 USCMA 210, 24 CMR 20.

This case further points up the distinction we drew in United States v Aronson and United States v Arthur, both supra. Here accused could most certainly be prosecuted for any and all false statements entered in his Personal History Statement, or any other official statements. However, the situation is radically different when he is suspected of having made false statements in these forms and thereafter questioned as to the suspected offenses involved. While a military person has a duty to correctly fill in required official forms, there is no corresponding duty which obligates him to speak truthfully regarding false entries which are the subject of inquiry as a basis for possible criminal prosecution. See United States v Geib, 9 USCMA 392, 26 CMR 172.

As was said in United States v Levin, 133 F Supp 88, 90 (D Colo) (1953):

"If the statute is to be construed as contended for here by the United States, the results would be far-reaching. The age-old conception of the crime of perjury would be gone. 18 U.S.C.A. § 1621. Any person who failed to tell the truth to the myriad of government investigators and representatives about any matter, regardless of how trivial, whether civil or criminal, which was within the jurisdiction of a department or agency of the United States, would be guilty of a crime punishable with greater severity than that of perjury. In this case the defendant could be acquitted of the substantive charge against him and still be convicted of failing to tell the truth in an investigation growing out of that charge, even though he was not under oath. An inquiry might be made of any citizen concerning criminal cases of a minor nature, or even of civil matters of little consequence, and if he wilfully falsified his statements, it would be a violation of this statute. It is inconceivable that Congress had any such intent when this portion of the statute was enacted. A literal construction of a statute is not to be resorted to when it would bring about absurd consequences, or flagrant injustices, or produce results not intended by Congress."

Consequently, the decision of the board of review is reversed. Inasmuch as accused was also found guilty of specification 1, with exceptions, involving the signing of a false official record, which finding was affirmed on appeal, the record is returned to The Judge Advocate General of the Air Force for reference to the board of review for appropriate redetermination of the sentence.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

It is quite necessary to a properly functioning military establishment that subordinates be required to furnish certain information to those in authority, under pain of violating Article 107, Uniform Code of Military Justice, 10 USC § 907. It is also necessary when

doubts arise about the accuracy of the information furnished that any questionable entries be verified. Subjects such as security clearance, assignments, pay and allowances, fraudulent enlistment, and many others are dependent upon the information furnished by members of the military services. Therefore, when a superior's inquiry concerning the correctness of official entries contained in a serviceman's personnel files is directed to him, he has a duty not to furnish false information. He may rely on his privilege and remain silent, but if he speaks he must tell the truth. The maintenance of personnel records is a continuous task, and their contents are not frozen in the form first submitted. Thus, when a superior whose duty it is to ascertain the true facts asks a question of a subordinate concerning the truthfulness of the data submitted, an answer, if given, possesses the same degree of officiality as that of the original document. While it is true that if the entries are suspected of being false, before being interrogated, the person involved is entitled to be warned under Article 31, that does not render the questions and answers unofficial. Here the inquiry was by the accused's immediate commander, and the questions asked were relevant to accused's future assignment in the Air Force, the clearance to which he might be entitled, and his future value to the service. Having been advised of possible irregularities, the commanding officer had a duty imposed on him by regulations to investigate the alleged false statements, and the accused had the privilege to remain silent or the duty to answer truthfully. Therefore, it appears to me this case falls within the ambit of this language taken from United States v Aronson, 8 USCMA 525, 25 CMR 29:

". . . Whether judged from the Government's position or from the accused's standpoint, the questions asked by the agent and the answers given by the accused were 'official' within the meaning of Article 107."

It must indeed be a strange concept which underlies the principle that a serviceman may with impunity falsify to his commander about entries in his official records. For my part, I prefer to believe that Congress, when it enacted Article 107 of the Uniform Code of Military Justice, 10 USC § 907, intended to hold service personnel to a higher standard.

I would affirm the decision of the board of review.