UNITED STATES, Appellee,

v.

Specialist Five Carmen P. JACKSON, 291–64–7316, United States Army, Appellant.

CM 447755.

U.S. Army Court of Military Review.

22 May 1986.

For Appellant: Captain Peter D.P. Vint, JAGC (argued); Colonel Brooks B. La Grua, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC (on brief).

For Appellee: Captain Karen L. Taylor, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Joseph P. Falcone, JAGC (on brief).

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

---

## OPINION OF THE COURT

WOLD, Senior Judge:

Appellant was convicted, *inter alia*, of making a false official statement in violation of Article 107, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 907 (1982). She contends that the trial judge erred by denying her motion for a finding of not guilty. Her arguments in support of this contention call into question the essential nature of the crime intended to be denounced by Congress in Article 107.

At approximately 0330 on 23 May 1985, the Panama Field Office of the U.S. Army Criminal Investigation Command [CID] was notified of a homicide on Fort Clayton, Republic of Panama. One Dana Keith quickly became the primary suspect, and by 0430 the investigation had focused on appellant's quarters on Fort Clayton since an automobile linked to Keith had been seen in the vicinity and appellant was an acquaintance of Keith. Appellant was seen coming out of her quarters and was approached by a criminal investigator who identified himself, told appellant he was investigating a homicide, and asked when appellant had last seen Keith. Appellant answered, "Two weeks ago." Later, confronted by evidence which pointed to Keith's recent presence in her quarters, appellant admitted that her answer was false and that Keith had been in her quarters at about 0300 that morning. Appellant contends here, as she did at trial, that these facts are insufficient to make out an offense under Article 107.

In *United States v. Aronson*, 25 C.M.R. 29 (C.M.A.1957), the United States Court of Military Appeals determined that there is a "general analogy" between the language of Article 107 [1] and section 1001, Title 18, United States Code,[2] and concluded that the two statutes share the same purpose, "to protect the authorized functions of Government agencies from the perversion which might result from the prohibited practices." *Id.* at 32. The Court next addressed what it regarded as a different question, that of the *scope* of Article 107, or, in other words, the meaning of the term "official." The Court determined that "the word 'official' used in Article 107 is the substantial equivalent of the phrase 'any matter within the jurisdiction of any department or agency of the United States' found in § 1001." Then, relying primarily on *United States v. Levin*, 133 F.Supp. 88, 90 (D.Colo.1953), the Court determined that both section 1001 and Article 107 covered only statements made under a "legal obligation to speak." Since Airman Aronson's status as the custodian of a fund placed him under a duty to account for the fund, the Court therefore found that his statement about that fund was "official." *Id.* at 32–33.[3]

In *United States v. Osborne*, 26 C.M.R. 235 (C.M.A.1958), the Court explicitly followed *Aronson* and quoted the following passage from *United States v. Levin*, *supra*, 133 F.Supp. at 90:

If [18 U.S.C. § 1001 were construed to cover statements by persons not under a

---

**1.** Art. 107. False official statements

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false statement knowing it to be false, shall be punished as a court-martial may direct.

**2.** § 1001. Statements or entries generally

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined

not more than $10,000 or imprisoned not more than five years, or both.

**3.** The Court also dealt with another argument. Airman Aronson contended that Article 31, UCMJ, 10 U.S.C. § 831, insulated him from Article 107 by removing his legal duty to speak. The Court's response was that Article 31 did indeed give Aronson the option of speaking or remaining silent, since he was a suspect. However, the Court reasoned that once Aronson elected to waive that protection, he reverted to his former position as a person under an obligation to speak, and for that reason remained within the ambit of Article 107. 25 C.M.R. at 33–34.

legal obligation to speak, the] age-old conception of the crime of perjury would be gone. 18 U.S.C.A. § 1621. Any person who failed to tell the truth to the myriad of government investigators and representatives about any matter, regardless of how trivial, whether civil or criminal, which was within the jurisdiction of a department or agency of the United States, would be guilty of a crime punishable with greater severity than that of perjury.... An inquiry might be made of any citizen concerning criminal cases of a minor nature, or even of civil matters of little consequence, and if he wilfully falsified his statements, it would be a violation of this statute. It is inconceivable that Congress had any such intent when this portion of the statute was enacted.

In *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980), the Court summarized its holdings in *Aronson* and *Osborne* as follows:

The Court has held that statements made to a law enforcement agent conducting an investigation of a suspected crime are not for that reason alone "official." *United States v. Aronson*, 8 U.S.C.M.A. 525, 25 C.M.R. 29 (1957); *United States v. Osborne, supra.* If, however, the suspect has some independent duty to account—for instance, if he is the custodian of government funds—the requisite officiality does exist. *United States v. Aronson, supra.*

Unlike the case at bar, none of these cases involved a false statement which was voluntarily rendered by a non-suspect during questioning initiated by investigating agents. However, Article III courts confronted with that situation have been reluctant to apply § 1001 to such questioning. *See, e.g., United States v. Chevoor*, 526 F.2d 178 (1st Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176

(1976); *United States v. Bedore*, 455 F.2d 1109 (9th Cir.1972); *United States v. Thevis*, 469 F.Supp. 490 (D.Conn.1979). This line of cases primarily relies on the rationale voiced in *United States v. Levin, supra.* For example: "[T]o punish those who lie to [federal investigators] when there is no legal obligation to respond to [their inquiries could lead to] sanctions as onerous as those imposed under the general perjury statute ... without affording those suspected of criminal conduct with any of the safeguards normally provided under that statute" or alerting the person questioned to the possibility that a false statement may lead to criminal liability. *United States v. Ehrlichman*, 379 F.Supp. 291, 292 (D.D.C.1974) (citing *Friedman v. United States*, 374 F.2d 363 (8th Cir. 1967), and *United States v. Levin, supra.* ).

Subsequent to all of the above decisions, however, the United States Supreme Court has construed 18 U.S.C. § 1001, holding that its scope is much broader than previously supposed. In *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), the Court stated:

[I]n *Bryson v. United States*, [396 U.S. 64 70–71, 90 S.Ct. 355, 359–60, 24 L.Ed.2d 264 (1969) ], we noted the "valid legislative interest in protecting the integrity of official inquiries" and held that a "statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001." *

104 S.Ct. at 1947 & n. 2. Furthermore, in the course of its opinion, the Supreme Court specifically rejected the major arguments advanced in *Levin* and *Friedman*, including the notion that enforcement of § 1001 against individuals who have made false statements to federal investigators would obviate the role of perjury statutes. The fact that the maximum possible penalty under § 1001 marginally exceeds

---

* Both respondent and the court below attempt to distinguish *Bryson* on the ground that the NLRB, unlike the FBI or the Secret Service, "is an agency with the power to adjudicate rights and establish regulations...." Pet.App., at 4a. See Brief for Respondent, at 16. But it is undis-

puted that in the matter at issue in *Bryson,* the NLRB was neither adjudicating rights nor establishing regulations. It was conducting an "official inquiry" or investigation, just as the FBI and the Secret Service were doing in the instant case.

that for perjury provides no indication of the particular penalties, within the permitted range, that Congress thought appropriate for each of the myriad violations covered by the statute. Section 1001 covers "a variety of offenses and the penalties prescribed were maximum penalties which gave a range of judicial sentences according to the circumstances and gravity of particular violations."

104 S.Ct. at 1948 (citation omitted).

From the outset, the United States Court of Military Appeals has held that the scope of Article 107 and 18 U.S.C. § 1001 are the same and has relied on the Article III courts' interpretations of the scope of section 1001. We believe that we are required to do likewise. In other words, we believe that in order to follow the precedents of the Court of Military Appeals, we must apply the analysis adopted by that court, not merely the result obtained by that analysis under different conditions. Since the Supreme Court in *Rodgers* has altered the Article III courts' position on the scope of 18 U.S.C. § 1001, the analysis adopted by the Court of Military Appeals for determining the scope of Article 107 now yields a different result.

The current status of statements by nonsuspect witnesses to investigators can be summed up as follows: "A citizen may decline to answer [a question by a government agent], or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." *Bryson v. United States, supra,* 396 U.S. at 72, 90 S.Ct. at 360. In the case at bar, appellant may or may not have been under a duty to answer the investigating agent's inquiries. On that matter we now express no opinion.[4] The key point is that once she decided to answer the CID investigator's questions

regarding Keith's whereabouts, appellant was bound to answer truthfully. Furthermore, her actual response, a knowing falsehood, could easily have thrown the CID investigation well off-course, resulting in the sort of frustration of investigative functions and waste of investigative resources which the Supreme Court has held that § 1001 was designed to prevent.[5] Since the Court of Military Appeals has held that the scope of Article 107 is the same as the scope of § 1001, we hold that appellant's statement fell within Article 107.

The findings of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.

---

4. *See United States v. Heyward,* 22 M.J. 35, 38 (C.M.A.1986) (Everett, C.J., concurring).

5. The only distinction we can find between a request for information made during an FBI or Secret Service investigation and a CID inquiry is that the FBI and the Secret Service have a statutory charter for their investigative functions, whereas the CID is a creature of service regulations. However, since the Secretary of

the Army has statutory power to make those regulations and there can be no doubt that the Congress contemplated that the United States Army would have the capacity to conduct criminal investigations, we regard this as a distinction without a difference. *See generally* Dept. of Army, Reg. No. 195–2, Criminal Investigation Activities (30 October 1985).