UNITED STATES, Appellee,

v.

Carmen P. JACKSON, Specialist Five,
U.S. Army, Appellant.

No. 55,528.
CM 447755.

U.S. Court of Military Appeals.

Aug. 29, 1988.

For Appellant: *Captain Stephanie C. Spahn* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Joel D. Miller, Major Marion E. Winter* (on brief); *Colonel John T. Edwards, Major Eric T. Franzen, Captain Keith W. Sickendick.*

For Appellee: *Captain Karen L. Taylor* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Denise K. Vowell* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to her pleas,[1] appellant was found guilty by a general court-martial consisting of a military judge alone of possessing marijuana, using cocaine, using marijuana, and making a false official statement, in violation of Articles 112a and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 907, respectively. The adjudged and approved sentence extends to a bad-conduct discharge, confinement and forfeiture of $250.00 (pay) per month for 6 months and reduction to E–1. The Court of Military Review affirmed. 22 M.J. 643 (1986). We granted review to consider this issue:

WHETHER THE MILITARY JUDGE ERRED BY DENYING DEFENSE COUNSEL'S MOTION FOR A FIND-

1. The procedure for arraignment set out at A8–4, Manual for Courts-Martial, United States, 1984, was not followed in this case. *See* para. 2–7, Arraignment, Motions, DA Pam. 27–9, *Military Judges' Benchbook* (Cl) (February 15, 1985).

ING OF NOT GUILTY OF CHARGE II (FALSE OFFICIAL STATEMENT) AS APPELLANT HAD NO OFFICIAL DUTY TO MAKE THE STATEMENT IN QUESTION.

We conclude the military judge properly denied the motion, so we affirm the decision below.

## I

The facts as recited by the court below are:

At approximately 0330 on 23 May 1985, the Panama Field Office of the U.S. Army Criminal Investigation Command [CID] was notified of a homicide on Fort Clayton, Republic of Panama. One Dana Keith quickly became the primary suspect, and by 0430 the investigation had focused on appellant's quarters on Fort Clayton since an automobile linked to Keith had been seen in the vicinity and appellant was an acquaintance of Keith. Appellant was seen coming out of her quarters and was approached by a criminal investigator who identified himself, told appellant he was investigating a homicide, and asked when appellant had last seen Keith. Appellant answered, "Two weeks ago." Later, confronted by evidence which pointed to Keith's recent presence in her quarters,[2] appellant admitted that her answer was false and that Keith had been in her quarters at about 0300 that morning....

*Id.* at 644.

## II

In *United States v. Hutchins,* 5 U.S.C.M.A. 422, 426, 18 C.M.R. 46, 50 (1955), this Court reviewed the legislative background of Article 107 and recognized a "general analogy" between its language and that of 18 U.S.C. § 1001, which prohibits the knowing and willful making of a "false ... or fraudulent statement" concerning "any matter within the jurisdiction of any department or agency of the United States." We concluded that both statutes were intended "to protect the authorized functions of government at departments

and agencies from the perversion which might result from the deceptive practices described." *Id.* at 427, 18 C.M.R. at 51 (quoting *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). *See also United States v. Aronson,* 8 U.S.C.M.A. 525, 528, 25 C.M.R. 29, 32 (1957), citing *Gilliland.* As we explained in *Aronson,* "the word 'official' used in Article 107 is the substantial equivalent of the phrase 'any matter within the jurisdiction of any department or agency of the United States' found in § 1001." *See also United States v. Ragins,* 11 M.J. 42 (C.M.A.1981) (signing false receipts for bread).

In *Aronson* and in *United States v. Osborne,* 9 U.S.C.M.A. 455, 26 C.M.R. 235 (1958), we ruled that a false statement to an investigator, when made by a suspect who had no independent duty to answer his questions, was not "official" within the purview of Article 107. *See also United States v. Davenport,* 9 M.J. 364, 367–68 (C.M.A.1980). This interpretation of Article 107 was based on the interpretation that had been given to 18 U.S.C. § 1001 in cases like *United States v. Levin,* 133 F.Supp. 88, 90 (D.Colo.1953).

In *United States v. Collier,* 23 U.S.C. M.A. 173, 48 C.M.R. 789 (1974), the Court considered whether the accused could be convicted under Article 107 for falsely "report[ing] to the military police at Fort Bliss, Texas, that a stereo reverberator unit had been stolen from his automobile parked on post." Distinguishing but not overruling the *Aronson-Osborne* line of cases, we concluded "that the report of a crime is an official statement within the purview of Article 107," even though there was no "official duty" to make the statement. Our conclusion was said to find "support in the interpretation of the analogous federal statute, 18 U.S.C. § 1001, by" two United States Courts of Appeals. 23 U.S.C.M.A. at 175, 48 C.M.R. at 791. However, this Court was aware that some appellate courts had construed § 1001 more narrowly. *See, e.g., Friedman v. United States,* 374 F.2d 363 (8th Cir.1967).

2. The CID agent found fresh blood in her residence.

More recently, in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), the Supreme Court had occasion to examine the scope of 18 U.S.C. § 1001. The defendant there had made false reports to the Federal Bureau of Investigation (FBI) "that his wife had been kidnaped and" also to "the Secret Service that" she had been "involved in a plot to kill the President." Resolving a conflict among the Circuits, then Justice Rehnquist's opinion for a unanimous court stated that the restrictive interpretation of § 1001 adopted by the Court of Appeals for the Eighth Circuit in *Friedman* was "unduly strained." Instead, the language of § 1001 "covers all matters confided to the authority of an agency or department." 466 U.S. at 479, 104 S.Ct. at 1946. Moreover, "the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." *Id.* at 480, 104 S.Ct. at 1946 quoting *Bryson v. United States*, 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969).

Under this interpretation, existence of "[a] statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001." 466 U.S. 481, 104 S.Ct. at 1947, quoting *Bryson v. United States*, *supra* 396 U.S at 71, 90 S.Ct. at 359 (footnote omitted). According to the Court, "[a] statutory basis" existed for the authority of the FBI and the Secret Service to conduct the investigations sparked by Rodgers' "false report." Moreover, there was "a valid legislative interest in protecting the integrity of [the] official inquiries" (396 U.S. at 70, 90 S.Ct. at 359) of these two agencies; and this interest was "clearly embraced in, and furthered by, the broad language of § 1001." 466 U.S. at 482, 104 S.Ct. at 1947. The important social policy of keeping an open line of communication between the general public and law-enforcement agencies did not require excluding false reports of crime from § 1001.

Since *Rodgers* was decided, 18 U.S.C. § 1001 has been construed broadly. *See United States v. Plascencia-Orozco*, 768 F.2d 1074 (9th Cir.1985) (defendant lied to federal magistrate performing administrative function); *United States v. Gonzalez-Mares*, 752 F.2d 1485 (9th Cir.), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985) (defendant lied to probation officer in pre-plea interview); *United States v. Morris*, 741 F.2d 188 (8th Cir. 1984) (defendant lied to Internal Revenue Service agent).[3]

### III

■■■ In view of the close relationship between Article 107 and 18 U.S.C. § 1001 —a relationship often adverted to by this Court—we conclude that Article 107 should be interpreted in a manner consistent with *Rodgers*. Construed this way, Article 107 clearly applies to false reports of crime—as we held in *United States v. Collier, supra.* Also, when investigators from a military organization such as the CID are seeking to locate a murder suspect and a servicemember gives misleading information about that person's whereabouts, Article 107 has been violated. Certainly, Congress never intended that this Article would fail to provide to military investigators the support available to FBI and Secret Service agents under 18 U.S.C. § 1001. Thus, even if not subject to an independent "duty to account," a servicemember who lies to a law-enforcement agent conducting an investigation as part of his duties has violated Article 107.[4]

### IV

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

3. The Courts of Appeals have continued to recognize the "exculpatory no" exception in interpreting 18 U.S.C. § 1001. *See United States v. Medina de Perez*, 799 F.2d 540 (9th Cir.1986); *United States v. Tabor*, 788 F.2d 714 (11th Cir. 1986); *cf. United States v. Gay*, 24 M.J. 304 (C.M.A.1987).

4. The military judge found that appellant had not been a "suspect" at the time of her false official statement; and no issue under Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b), has been raised in this Court.