UNITED STATES, Appellee,

v.

Staff Sergeant Clifton R. PRATER, 446–44–0190, United States Army, Appellant.

ACMR 8800576.

U.S. Army Court of Military Review.

30 March 1990.

---

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Marion E. Winter, JAGC, Captain Timothy P. Riley, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, Major Maria C. Fernandez, JAGC, Captain James K. Reed, JAGC (on brief).

Before KUCERA, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

KUCERA, Senior Judge:

On 26 May 1989, in a published opinion, this court affirmed the findings of guilty in appellant's case with one exception. A portion of appellant's conviction of larceny was found to be barred by a three-year statute of limitations. Based on this error we reassessed the sentence, affirming in its entirety that sentence approved by the convening authority. *United States v. Prater*, 28 M.J. 818 (A.C.M.R.1989), *vacated by unpub. order, 5 Sept. 1989* [hereinafter *Prater I*].

One of the alleged errors resolved against appellant in that decision involved the providence of his guilty plea to making a false official statement (Specification 3 of Charge II). Appellant asserted that the military judge erred by accepting his plea without inquiring into the "exculpatory no" defense. Citing, *inter alia, United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), and *United States v. Jackson*, 26 M.J. 377 (C.M.A.1988), this court declined "to extend the 'exculpatory no' defense to circumstances where a *suspect* makes a properly warned statement to those investigating his alleged crimes." *Prater I*, 28 M.J. at 820 (footnote omitted).

Appellant, following publication of *Prater I*, timely petitioned this court for reconsideration of its decision as to the scope of the "exculpatory no" defense. He argued that "this Court ... [had] departed from binding precedent" in not applying the 'exculpatory no' defense" to his circumstances. We granted the petition over appellate government counsel's opposition, vacating our prior decision and, in essence, we agreed with appellant on reconsideration. *United States v. Prater*, ACMR 8800576 (A.C.M.R. 15 Nov. 1989) (unpub.), *vacated by unpub. order, 14 Dec. 1989* [hereinafter *Prater II*].

On 4 December 1989, appellate government counsel requested that we once again reconsider our opinion, stating that our opinion on reconsideration in *Prater II* was overbroad. We granted the government's petition, vacating our decision in *Prater II* on reconsideration.

The appellant Prater and his putative wife Joyce met in 1981. Subsequently, from 1 February 1983 until at least June of 1987, they lived together and held themselves out as husband and wife. While some of Prater's acquaintances suspected that the Praters were not married to each other, appellant claimed Joyce as his wife and received basic allowance for quarters at the "with dependent" rate and other entitlements based on the dependency status of Joyce as appellant's wife.[1] All along, however, the appellant knew that Joyce was not his wife. A stipulation of fact admitted at trial in part states that:

Prior to 1 February 1983, the accused discovered that the woman whom he had married had, in fact, been previously married to another and continued to be so married. This woman left the accused

---

1. Dependency based on a soldier's status carries with it such benefits as: increased basic allowance for quarters, family separation allowance, dependent travel allowances, higher weight limitations for household goods shipment, medical and dental care, post exchange and commissary privileges. These benefits inure to the soldier and his spouse at the government's expense.

shortly after making this fact known to him. He ceased to support her at that point. Upon his purported marriage to her, he had applied for and began to receive Army pay benefits arising from his alleged status as married with a dependent wife. At the time he applied for these benefits he believed himself to be entitled to them. Upon discovering that his marriage was bigamous, the accused realized that his marriage was invalid and that he had no dependents for Army pay purposes. The accused took no steps to alert the Army to this fact. Knowing that he was not entitled to them, the accused continued to collect Army benefits ... on the false premise that he was married and had a dependent. These benefits included payments of [Basic Allowance for Quarters], [Variable Housing Allowance], Family Separation Allowance, and Dependent Travel/Dislocation Allowance.

Rather than following accepted legal procedures to satisfactorily resolve his marital status, the appellant and his putative wife attempted to ensure that their meretricious relationship was not discovered by the Army.

The deception worked until April 1987 when Joyce was sexually assaulted and was taken by the appellant and Joyce's friend to a hospital for treatment. There, the appellant signed an emergency card listing Joyce as his wife. At that time, Joyce's friend observed that Joyce had two military identification cards (ID), each bearing a different name.[2] That information was given to military authorities investigating the sexual assault. With other information gathered during that investigation, it led the investigators to question the appellant whether in fact he and Joyce were married. Responding to the investigators' questions, on 18, 19, and 21 May 1987, the appellant falsely maintained to them that indeed, he and Joyce were married. These three statements formed the basis for the false official statement charged. Now the appellant asserts, *inter alia,* that

THE MILITARY JUDGE ERRED BY ACCEPTING [HIS] PLEA OF GUILTY TO FALSE OFFICIAL STATEMENT (SPECIFICATION 3 OF CHARGE II) WITHOUT INQUIRING INTO THE "EXCULPATORY NO" DEFENSE.

In *United States v. Aronson,* 25 C.M.R. 29 (C.M.A.1957), the Court of Military Appeals held that there is a general analogy between Article 107 of the Uniform Code of Military Justice, 10 U.S.C. § 907 (1982) [hereinafter UCMJ] and Section 1001, 18 U.S.C. § 1001 (1982). Since that time, the appellate courts have, consistent with federal decisions, recognized the "exculpatory no" defense in circumstances where a suspect makes a false statement to an investigator, but has no independent duty to answer questions or to make an account. However, in *United States v. Jackson,* 22 M.J. 643 (A.C.M.R.1986), *aff'd,* 26 M.J. at 377, the scope of the defense was restricted. *Jackson* holds that, even if not subject to an independent duty to account, a servicemember who lies to a law enforcement agent conducting an official investigation does so in violation of UCMJ art. 107. The Court of Military Appeals ruled that UCMJ art. 107 should be broadly construed consistent with *United States v. Rodgers,* 466 U.S. at 475, 104 S.Ct. at 1942. In *Rodgers,* the United States Supreme Court noted that there is a valid legislative interest in protecting the integrity of official inquiries. The Court further noted that a statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under Section 1001. *See also Bryson v. United States,* 396 U.S. 64, 70–71, 90 S.Ct. 355, 359–360, 24 L.Ed.2d 264 (1969).

*Jackson* shifted the focus from the "duty to account" to the "officiality of the investi-

---

2. Although not necessary to our disposition of the issue involving the "exculpatory no" defense, we note from the allied papers that prior to his living with Joyce, appellant has been married at least three times and has a daughter with a woman to whom he has never been married; Joyce has been married six times. One of the two ID cards she had at the hospital was issued to her for being the dependent wife of servicemember Chisham to whom she continued to be legally married while living with the appellant Prater; the other ID was issued to her on the basis of claimed dependency as the wife of appellant Prater.

gation." It expanded the potential reach of UCMJ art. 107 to include statements that impede governmental functions regardless of a duty to account; concomitantly, it diminished the "exculpatory no" defense. *See generally* Milhizer, *The Court of Military Appeals Expands False Official Statement under Article 107, UCMJ,* The Army Lawyer, Nov. 1988, at 38-40.

We find that, as part of an official investigation into allegations of sexual assault against appellant's putative wife Joyce, the government authorities had a right to determine whether appellant and Joyce were married to each other. The validity of appellant's marriage was at the core of the government's responsibility for providing benefits to the appellant and his dependent wife Joyce. The appellant and his wife would not have been entitled to such benefits unless they in fact were legally married to each other.[3]

During the providence inquiry the appellant admitted that he was a suspect and was warned of his rights by the investigators. His choices then were not to speak at all or to speak truthfully. For as long as the government was footing the bill for the benefits that he and his putative wife Joyce continued to enjoy, the government had a right to inquire, *see Rodgers,* 466 U.S. at 475, 104 S.Ct. at 1942, and the appellant had a corresponding "duty to account." He did so account, but not truthfully. At the trial, he admitted that his statements were designed to mislead the investigators. To assure the investigators were misled, the appellant and Joyce called the minister who had previously married Joyce to Chisham and asked him to call the investigators and tell them that he, the minister, remembered marrying Joyce to Bud Prater, the appellant.[4]

Whether we apply the pre-*Jackson* precedent and focus on appellant's duty to account, or the *Jackson* precedent focusing on "officiality of the investigation," under the facts of appellant's case the ultimate result remains the same—the "exculpatory no" defense does not come into play.

Appellant pled guilty and freely admitted to making false official statements intentionally designed to mislead military authorities in their conduct of an official investigation. He knew that his statements were false yet he persisted to perpetuate the lie. He did not raise the "exculpatory no" defense at trial and we thus have no occasion to reject his plea. *See United States v. Sievers,* 29 M.J. 72, 74 (C.M.A. 1989).

Accordingly, we now hold that the appellant's plea of guilty to Specification 3, Charge II, the false official statement offense, was provident.

We have considered the other issue raised, as well as those matters brought to our attention pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them without merit.

As for the Specification of Charge I (larceny), relying on the providence inquiry and the stipulation of fact, we affirm the finding of guilty of the Charge, but only so much of the Specification as provides that appellant did, at Fort Campbell, Kentucky, from 24 December 1986 through 1 September 1987, steal more than $100.00 in unentitled military benefits from the United States Army. The findings of guilty of the remaining charges and specifications are affirmed.

On the basis of the errors noted and the entire record, we will reassess the sentence. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986). The court affirms only so much of the sentence as provides for a bad-conduct discharge and confinement for six months.

Judge GILLEY concurs.

---

3. Allied papers in the Record of Trial show that in May 1987, the appellant was legally married to Donna Webb and Joyce was married to George Chisham; appellant and Joyce were not legally married to each other.

4. Talking to the minister by telephone, appellant attempted to project himself in the image of George Chisham, albeit named Prater. The ruse backfired and the minister told the investigators that he married Joyce to George Chisham and not to Bud Prater.

GIUNTINI, Judge, dissenting:

I dissent. Like my Brothers, I am put off by a defense which seems to sanction the telling of lies. However, I cannot ignore the rationale behind the "exculpatory no" doctrine and its acceptance by the federal courts, including the United States Court of Military Appeals.

In *United States v. Stark*, 131 F.Supp. 190, 205 (D.Md.1955), the court explained that 18 U.S.C. § 1001 was intended to "protect the government against false pecuniary claims" and "to protect governmental agencies from perversion of their normal functioning." Further, the court stated that the statute was enacted: "to protect the government from the *affirmative* or *aggressive* and voluntary actions of persons who take the *initiative*, or, in other words, to protect the government from being the victim of some positive statement, whether written or oral, which has the tendency and effect of perverting its normal proper activities." *Id.* (emphasis added). The court concluded that the statute was not designed to encompass false statements that were not volunteered by an individual with the purpose of inducing government action, but instead were merely exculpatory responses to questioning initiated by government agents. *Id.* at 205–08.

"The courts have developed the 'exculpatory no' doctrine ... as an exception to the broad provisions of ... [18 U.S.C. § 1001] for those denying guilt in response to questioning by law enforcement authorities." *United States v. Cogdell*, 844 F.2d 179, 182 (4th Cir.1988). The Court of Military Appeals has stated that the "exculpatory no" doctrine should be applicable to certain UCMJ art. 107 offenses. *See United States v. Gay*, 24 M.J. 304, 305 (C.M.A. 1987) (doctrine may be applicable to certain UCMJ art. 107 offenses, consistent with the limited scope of 18 U.S.C. § 1001 to protect against subversion or frustration of administrative programs of government),

and *United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980) ("exculpatory no" exception to UCMJ art. 107 should be recognized).

Establishing a defense whereby an individual essentially is permitted to lie to a government official may seem offensive at first blush; however, there are valid reasons for recognizing this defense in limited situations. First, adopting a literal reading of 18 U.S.C. § 1001 and UCMJ art. 107 virtually would make any false statement, sworn or unsworn, written or oral, a felony. Such a reading would be contrary to legislative intent. *See United States v. Becker*, 855 F.2d 644 (9th Cir.1988). *See also United States v. Bramblett*, 348 U.S. 503, 504–08, 75 S.Ct. 504, 505–08, 99 L.Ed. 594 (1955); *United States v. Gilliland*, 312 U.S. 86, 93–95, 61 S.Ct. 518, 522–523, 85 L.Ed. 598 (1941); and *United States v. Hutchins*, 18 C.M.R. 46, 49 (C.M.A.1955).

Second, the "exculpatory no" defense accommodates legitimate concerns that the prosecution of a suspect's false statement is uncomfortably close to being at odds with usual fifth amendment protections. *See, United States v. Medina De Perez*, 799 F.2d 540, 547 (9th Cir.1986) (defendant's responses to questions posed by federal agents during a post-arrest interrogation were within the "exculpatory no" exception).

Third, as a practical matter, experienced criminal investigators generally know that suspects may lie. However, from a suspect's false statements, investigators are able to obtain more information, often enabling them to further develop their case. Thus, criminal investigators who are lied to by a suspect who makes a false statement purely in the capacity as a suspect are not really frustrated in the conduct of their criminal investigations.[1] In *United States v. Aronson*, 25 C.M.R. at 34, the court stated "[w]e can hardly imagine that an agent would accept a statement from such a person and conclude from its contents

---

1. However, a suspect with an independent duty to speak (*e.g.,* a custodian of a fund) who chooses to forego his right as a suspect to remain silent must speak truthfully when he accounts officially about fund matters. Also, if a non-suspect lies to criminal investigators that may violate UCMJ art. 107. *Jackson,* 26 M.J. at 379.

that the investigation should be closed, unless that statement constitutes a confession or substantial admission of the offense charged. A statement which is not a confession or a substantial admission can only lead to further investigation to discover the facts—and that is the very purpose of the agency." *Id.* at 34.

In my opinion, the majority misreads the import of *Jackson.* In that case, the United States Court of Military Appeals only said that a non-suspect may not escape criminal liability for telling lies to military criminal investigators by arguing that their investigation is not official in the sense of UCMJ art. 107, or by asserting that a non-suspect has no independent duty to account. The court did not explicitly, say or even hint, that a suspect who made similar statements could be prosecuted under UCMJ art. 107. In fact, the court referred to the *Aronson/Osborne* line of cases, the continued viability of the "exculpatory no" doctrine, and the fact that the *Jackson* declarant was not a suspect. This suggests to me that the "exculpatory no" doctrine is alive and well, at least in limited circumstances. *But see United States v. Goldsmith,* 29 M.J. 979, 984 (A.F.C.M.R. 1990) (*Aronson* dictum that a non-fiduciary may lie at will to investigators has been overtaken, primarily by *Jackson* ).

The majority goes to considerable length to establish that the appellant falsely applied for and received government benefits, that the government has the right to investigate such matters, and that when questioned by criminal investigators, the appellant lied about it. There is no dispute about these issues. Someone like the appellant might be prosecuted for false claims, larceny, false official statements in connection with filing the false claims, and false swearing if his lies to criminal investigators were made under oath. However, the question before this court is not whether such deceitful activity should go unpunished, but whether the appellant's lies to criminal investigators were the type of false official statements contemplated by UCMJ art. 107. I see nothing in the majority opinion that convinces me that we can ignore the *Aronson/Osborne* line of cases

which generally says that a suspect's lies to criminal investigators are not violative of UCMJ art. 107.

The case of *United States v. Geib,* 26 C.M.R. 172 (C.M.A.1988) is instructive on the issue before us. In *Geib,* the accused was convicted of two specifications of making false official statements. One specification alleged that he filed an official request for discontinuance of his Class Q Allotment, but that the document was false because the accused was not in fact divorced as he represented. The second specification alleged that he made a false official statement to a criminal investigator when he told the agent that he had been divorced and that he had received from his former wife a copy of the divorce decree. The court held that the statements to the agent involved in the second specification were not official within the meaning of UCMJ art. 107. The evidence showed the accused made virtually the same statements in the official Department of Defense form almost a year earlier and these actually initiated his request for discontinuance. These earlier statements, not those to the agent, were the official statements which provide the operative facts to effect discontinuance of the allotment. The later representations were unquestionably made in an investigation into the accused's commission of an offense, not in an inquiry into whether he desired to end his allotment. Thus, they were not official in the sense of UCMJ art. 107.

*Geib* and *Prater* present parallel situations. Both could be convicted of making false official statements in connection with their official filings for claimed benefits; neither should be convicted for making false official statements by denying complicity to criminal investigators, if the "exculpatory no" defense is otherwise available to them.

Most federal circuits have adopted a test delineating when the "exculpatory no" doctrine is applicable. *See Medina De Perez,* 799 F.2d at 544–46. However, the military courts have not announced a similar test.

I would adopt a five-part test to determine whether the "exculpatory no" defense is applicable to a prosecution for a violation of UCMJ art. 107. The defense would apply if all of the following criteria are met:

(1) The statement was not made in pursuit of a claim to a privilege or a claim against the government (e.g., money or benefits). *See United States v. Geib*, 26 C.M.R. at 172 (accused's filing of false information in Class Q Allotment forms constituted a violation of UCMJ art. 107; his false statements to criminal investigators about this matter did not);

(2) The statement was not initiated by the declarant but rather was made in response to inquiries initiated by a federal agency or department. *See Cogdell*, 844 F.2d at 184 ("while the commission of a crime normally results in police investigation, it cannot be said that by committing a crime the criminal is responsible for initiating any ensuing investigation"; thus, the defense might still be available);

(3) The statement did not pervert the basic functions entrusted by law to the agency. *See Jackson*, 26 M.J. at 377 (non-suspect perverted a criminal investigation when she gave misleading information about a murder suspect's whereabouts); *United States v. Collier*, 48 C.M.R. 789, 791 (1974) (non-suspect's false report of crime "pervert[s] Government machinery...."); *United States v. Aronson*, 25 C.M.R. at 29 (statement from ordinary suspect, however false, is "hardly calculated to pervert the function of the investigating agency.... [o]n the contrary, ... [it] stimulate[s] the agency to carry out its function...."; however, suspect who has independent duty to account, such as a fund custodian, who decides to forego the right to remain silent perverts government operations if he lies about these official fund activities); *United States v. Osborne*, 26 C.M.R. at 235) (soldier perverts government function if he falsely fills out "Personal History Statement," or any other official forms); however, when questioned as a suspect by criminal investigators about the false entries, the suspect has no official duty to speak truthfully about them and thus, governmental functions are not perverted if the suspect lies about the matter); *see also United States v. Sievers*, 29 M.J. at 72, and *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980) (if suspect's statement goes beyond a mere denial, it might pervert governmental function and result in UCMJ art. 107 sanction);

(4) The false statement was made in the context of an investigation rather than of a routine exercise of administrative responsibility. *See Cogdell*, 844 F.2d at 184 (defendant's false claim to IRS was a crime; her false denials to the Secret Service about the matter were not violations of 18 U.S.C. § 1001).

(5) The statement was made in a situation in which a truthful answer would have incriminated the declarant.

The "exculpatory no" doctrine is inapplicable if the declarant's statement fails to satisfy any one of the above requirements.

Applying the five-part test to this case: (1) the appellant's statement to police investigators was not made by him as part of his false claim for allowances from finance; (2) his statement was not initiated by the appellant but was made in response to inquiries initiated by police investigators; (3) the appellant's false statements, as an ordinary suspect, about his marital status were made to police investigators, not to finance or personnel officials as part of a routine exercise of administrative responsibility; therefore, his false statements did not pervert the basic functions entrusted by law to any agency; (4) the statement was made in the context of a criminal investigation rather than of a routine exercise of administrative responsibility; (5) the statement was made in a situation in which a truthful answer would have incriminated the declarant.

Under the circumstances, the appellant could possibly have availed himself of the "exculpatory no" defense. In my opinion, it was error for the military judge not to inquire into this matter during the prov-

idence inquiry. Therefore, I agree with appellant that his plea of guilty to Specification 3 of Charge II (false official statement) was improvident. I would set aside that finding of guilty, dismiss that Specification, and reassess the sentence. I agree with my Brothers' disposition of Charge I and the remaining charges and specifications.