UNITED STATES, Appellee,

v.

Clarence L. DORSEY, Staff Sergeant
U.S. Army, Appellant.

No. 68,244.

CMR No. 9100827.

U.S. Court of Military Appeals.

Argued June 3, 1993.

Decided Sept. 28, 1993.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise* and *Major Fran W. Walterhouse* (on brief).

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Timothy W. Lucas* (on brief).

*Opinion of the Court*

WISS, Judge:

Following mixed pleas, a general court-martial of officer members convicted appellant of making a false official statement, larceny, false swearing, and obstructing justice, in violation of Articles 107, 121, and

134, Uniform Code of Military Justice, 10 USC §§ 907, 921, and 934, respectively. Appellant's sentence extended to a bad-conduct discharge, confinement for 6 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion dated April 27, 1992.

On appellant's petition, we granted review of the following two issues: *

## I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ALLOWING IN EVIDENCE OF UNCHARGED MISCONDUCT ON THE MERITS TO PROVE APPELLANT POSSESSED THE REQUISITE INTENT TO OBSTRUCT JUSTICE.

## II

WHETHER THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILTY TO THE SPECIFICATION OF CHARGE I (FALSE OFFICIAL STATEMENT).

Now, after full consideration, we decide both issues against appellant.

## I

Appellant's offenses included larceny of a wallet and its contents from a German citizen named Frau Maier, to which he pleaded guilty, and obstruction of justice by allegedly paying Maier 1,000 Deutsche marks (DM) not to pursue criminal action against him for the larceny, to which he pleaded not guilty. The Government's evidence indicated that, after appellant had made full restitution to her for the money in the wallet, he had offered her an extra 1,000 DM.

The evidence was inconsistent and somewhat confusing as to the circumstances surrounding this critical additional payment. Maier's translated testimony in part reflects that appellant gave her the money and urged her to withdraw her larceny complaint; "I should say that it was my mistake." In other part, however, her translated testimony seems to suggest that appellant's payment of 1,000 DM more than the amount of money he had stolen was to compensate her for the wallet and papers that were in the wallet which he told her he could not locate. In fact, the latter version tends to be supported by the testimony of Mr. Buchinger, a German merchant who acted as interpreter during appellant's conversations with Maier. Thus, appellant's intent in making that payment to Maier, after having already made full restitution for the money he had stolen, was a focus of important controversy.

██ To assist the factfinders in resolving this question, the prosecutor sought to introduce testimony of Private First Class Vivian to the effect that, about one month after this last meeting with Maier, appellant had promised to pay Vivian $300—and did, in fact, pay him $100. The *quid pro quo* was appellant's request that Vivian make a false sworn statement to criminal investigators regarding the theft from Maier and present false testimony on the same subject at appellant's court-martial. This came to light only the day before appellant's trial, when Vivian disclosed the truth to a confidant who then went to the authorities. In the meantime, however, Vivian did write a statement declaring that he had seen appellant find the wallet in a club, repeated the same story to appellant's defense counsel, offered to swear to that story in court, and went with appellant to the club in question just before trial in order to become familiar with the surroundings.

The Government argued that Vivian's testimony was admissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United

---

* We granted review of an additional issue that, in the meantime, has been decided against appellant. *United States v. Weiss*, 36 MJ 224 (CMA 1992), *aff'd*, —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). Accordingly, we reject his claim for relief in this regard. *See United States v. Carpenter,* 37 MJ 291 (CMA 1993).

States, 1984, to show appellant's "plan, his intent, and his knowledge ... concerning these offenses.... It shows a continuing course ... to obstruct justice by wrongfully endeavoring to improperly influence the testimony of others." The military judge correctly noted that neither knowledge nor plan were in issue and put his finger on the fact that "the real crucial thing is—does it prove an intent at the time that he offered this alleged other bribe or whatever it was?"

Needless to say, the defense objected, see Mil.R.Evid. 103(a)(1), specifying three related grounds: 1) The evidence was not relevant under Mil.R.Evid. 404(b) to show what appellant had been thinking when he had met with Maier one month earlier; 2) thus, the only purpose of the evidence was to reflect adversely on appellant's general character and to suggest that he had acted in conformity therewith, a purpose that flies directly in the face of Mil.R.Evid. 404(b); and 3) in any event, the probative value of the evidence, in light of these first two points, was substantially outweighed by the danger of unfair prejudice, see Mil. R.Evid. 403.

After full litigation of the defense objection, the military judge admitted the evidence of uncharged misconduct under Mil. R.Evid. 404(b) as relevant to show appellant's intent in offering Maier the 1,000 DM a month earlier. He explained:

> My feeling is it's highly relevant, highly probative, and its prejudicial impact in an illegal sense is slight. And I've come to that conclusion because this [effort of appellant and Vivian to carry out the deceit as to appellant's role in the larceny] extended over a period from the first weekend of February at a point in time fairly close to the thousand-dollar [sic] incident, and it extended up until 2 days ago. To me, that's very relevant, and the court members should see it....

Thereafter, consistent with his ruling, the judge instructed the members before Vivian testified that they could consider the testimony

for a very limited purpose, and that is for its tendency, if any, to show that at the time the accused offered Gaby Maier the 1,000 Deutsche marks—if in fact that incident happened—that he had the requisite intent to impede the due administration of justice. And that's the only purpose you can consider his testimony for. You can't consider his testimony for the purpose to demonstrate that the accused is a bad person and therefore committed any of the charged offenses.

He repeated the substance of this instruction on two later occasions, as well.

We stated in United States v. Reynolds, 29 MJ 105, 109 (1989):

> [W]hen we look to evidence of uncharged *misconduct,* we are testing its admissibility under at least three standards:
>
> 1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts? *United States v. Mirandes–Gonzalez,* 26 MJ 411 (CMA 1988).
>
> 2. What "fact ... of consequence" is made "more" or "less probable" by the existence of this evidence? Mil. R.Evid. 401; *United States v. Ferguson,* [28 MJ 104] at 108 [ (CMA 1989) ].
>
> 3. Is the "probative value ... substantially outweighed by the danger of unfair prejudice"? Mil.R.Evid. 403; [S.] Saltzburg [L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* ] at 362 [ (2d ed.1986) ].

Measured against this standard, we are compelled to conclude that the military judge did not abuse his discretion. *See generally* S. Childress and M. Davis, 2 *Federal Standards of Review* § 11.02 (Review of Evidence Calls) at 11–5 to 11–8 (2d ed.1992).

First, Vivian's testimony surely is adequate to reasonably support a finding that appellant committed the uncharged misconduct. Indeed, appellant acknowledges that the standard for meeting this factor is quite low. *See United States v. Jones,* 32 MJ 155, 157 (CMA 1991), and *United States v. Castillo,* 29 MJ 145, 151 (CMA

1989), both relying on *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

Second, appellant's intent in giving Maier the 1,000 DM clearly was in controversy. *See generally United States v. Reynolds, supra* at 110 (Mil.R.Evid. 404(b) evidence should not be admitted unless and until the issue it addresses is in controversy); *accord United States v. Ferguson,* 28 MJ 104, 108 (CMA 1989); *United States v. Gamble,* 27 MJ 298, 303–04 (CMA 1988); *United States v. Wingart,* 27 MJ 128, 135 (CMA 1988); *United States v. Rappaport,* 22 MJ 445, 446 (CMA 1986). It was an element which the Government had to prove beyond reasonable doubt, *see* para. 96b, Part IV, Manual, *supra;* and it was an issue sharply contested by the parties. Thus, the question in connection with this factor becomes, is the challenged evidence relevant under Mil.R.Evid. 402 as "having any tendency to make the existence of [that intent] ... more probable ... than it would be without the evidence"? Mil.R.Evid. 401. Otherwise, all that evidence does is to taint the accused as a bad character with the improper implication that, therefore, he committed the crime charged. *See* Mil. R.Evid. 404(b).

"Where evidence of other crimes is offered to prove intent, the relevancy of the other crime is derived from the accused's possession of the same state of mind in the commission of both crimes." *United States v. Rappaport, supra* at 447. Appellant's later conduct with Vivian in material respects arguably paralleled his action with Maier: He offered money to someone to lie to law enforcement officials (and, in the case of Vivian, under oath and, as well, at trial) in a manner that would absolve appellant of any criminality as to the alleged larceny of Maier's wallet and its contents. In this context, his abundantly clear intent when he offered Vivian money makes it more probable that he had that same criminal intent to obstruct the due course of justice relative to the same crime when he offered Maier the 1,000 DM one month earlier. *See United States v. Farber,* 630 F.2d 569, 571 (8th Cir.1980) (In prosecution

for failing to file income tax return in 1974, "tax documents which could fairly be characterized as tax protester materials for years subsequent" to 1974 were admissible under Fed.R.Evid. 404(b) to show intent in failing to file in 1974.), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); *United States v. Fairchild,* 526 F.2d 185, 188–89 (7th Cir.1975) (In trial for selling and passing counterfeit notes, evidence that after the crime charged but before trial defendant had shown witness a large quantity of what he said were counterfeit notes in trunk of his car was admissible to show that defendant had ability to distribute notes and that his passing of a single note was not by mere accident.), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

Finally, given the similarity between the crime charged and the uncharged misconduct in question and certainly in view of the military judge's careful limiting instructions both prior to Vivian's testimony as well as on two later occasions, we hold that the military judge did not abuse his discretion by concluding that its probative value was not substantially outweighed by danger of *unfair* prejudice to appellant.

With this analysis, we hold that the military judge did not abuse his discretion when he admitted Vivian's testimony to show appellant's intent in offering Maier 1,000 DM.

## II

■ Agent Aber met with appellant on December 28, 1990, after appellant had become a suspect in the larceny of Maier's wallet. Following that interview, appellant executed a sworn statement, which later became the basis of his conviction for false swearing. On January 8, 1991, Aber telephoned appellant to advise him of the date and time for a polygraph examination that they had discussed. In response, appellant told Aber that he "was not going to take it and that ... his commander and first sergeant said he was off the hook because the victim had received all the monies back."

That statement is the subject of the charge of making a false official statement.

In this Court, appellant cites *United States v. Jackson*, 26 MJ 377 (CMA 1988), to support his assertion that, for his statement to Aber to have been an "official statement," Aber must have been conducting an investigation as part of his duties and that scheduling a polygraph examination simply is not part of an agent's duties in conducting an investigation.

Without reiterating in full the discussion in *United States v. Hagee*, 37 MJ 484 (CMA 1993), this Court has steadfastly drawn an analogy in purpose and scope between Article 107 and 18 USC § 1001. Indeed, we specifically have observed in this regard that "official" for purposes of the former provision is the same as the requirement in the latter statute that the false statement be made "in any matter within the jurisdiction of any department or agency of the United States." *United States v. Jackson, supra* at 378; *United States v. Ragins*, 11 MJ 42, 44 (CMA 1981).

Quite clearly, in this context, then, both statutes encompass a statement made to a law enforcement agent that is within the scope of that agent's conduct of a criminal investigation. *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). Relying on *Rodgers*, we expressly held in *United States v. Jackson, supra* at 379, that, "even if not subject to an independent 'duty to account,' a servicemember who lies to a law enforcement agent conducting an investigation as part of his duties has violated Article 107." (Footnote omitted.) With particular relevance to this appeal, this Court declared in *United States v. Prater*, 32 MJ 433, 438 (1991), that

> statements to military criminal investigators can now be considered official for purposes of Article 107. Finally, where warnings under Article 31 are given to the criminal suspect, as in the present case, his duty to respond truthfully to criminal investigators, if he responds at all, is now sufficient to input officiality to his statements for purposes of Article 107.

Appellant seeks to avoid the seemingly inevitable result of application of this language to his case by urging that conducting a polygraph examination is not within the duties of a military criminal investigator. Thus, he argues that his lie to Aber in order to avoid taking a polygraph was not a false "official" statement. Appellant's reasoning is strained beyond the point of rupture.

Quite apart from potential difficulties with admissibility of polygraph results and quite apart from statutory and regulatory proscriptions of compulsory polygraph examinations pursuant to a criminal investigation, there can be no sincere doubt that such examinations are helpful investigative tools for law enforcement agents. Indeed, even appellant concedes that a "polygraph is a useful investigative aid to secure and verify evidence." *See* para. 1–4, Army Regulation 195–6, Criminal Investigation: Department of the Army Polygraph Activities (1 September 1980).

Appellant could have voluntarily taken the polygraph examination requested of him, or he could have declined. But he could *not*, in the course of purporting to explain his declination, lie about his reason and, in the process, potentially affect the investigation that was underway. *United States v. Prater* and *United States v. Jackson*, both *supra*.

III

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN, and Judges COX, CRAWFORD, and GIERKE concur.