**UNITED STATES, Appellee,**

v.

**Milton F. CABALLERO, Boatswain's
Mate Third Class U.S. Navy,
Appellant.**

No. 68,073.
CMR No. 90–0903.

U.S. Court of Military Appeals.

Argued May 11, 1993.

Decided Sept. 10, 1993.

For Appellant: *J. Byron Holcomb* (argued).

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T.G. Hess, USMC.*

### Opinion of the Court
SULLIVAN, Chief Judge:

In September and December 1989, appellant[1] was tried by a special court-martial composed of officer members at the Puget Sound Naval Shipyard, Bremerton, Washington. Contrary to his pleas, he was convicted of dereliction of duty (Charge I) and four specifications of making a false official statement (Charge II), in violation of Articles 92 and 107, Uniform Code of Military Justice, 10 USC §§ 892 and 907, respectively. The adjudged sentence included a bad-conduct discharge, confinement for 3 months, and reduction to pay grade E–1. On February 20, 1990, the convening authority approved the sentence as adjudged. On August 22, 1991, the Court of Military Review affirmed the findings of guilty and the sentence. That court apparently renotified appellant of its decision on March 16, 1992, because he had not received notice of its initial decision.

---

1. The decision below erroneously refers to appellant as being a Marine.

On October 1, 1992, this Court granted[2] review on the following issue[3] raised by appellate defense counsel:

WHETHER, ASSUMING *ARGUENDO* THE EVIDENCE PRODUCED BY THE GOVERNMENT AS TO CHARGE II AND THE SPECIFICATIONS UNDER CHARGE II, THE EVIDENCE [sic] STATES AN OFFENSE WITHIN THE MEANING OF ARTICLE 107, UCMJ, WHICH REQUIRES SAID EVIDENCE TO BE BASED ON *OFFICIAL* STATEMENTS OF APPELLANT.

We hold that the evidence of record sufficiently established that appellant's oral statements to his work supervisors that he was going to physical therapy were false official statements within the meaning of Article 107. *See United States v. Harrison*, 26 MJ 474 (CMA 1988).

Evidence in the record of trial shows that appellant sustained an injury in 1988 that required treatment at the Naval Hospital, Subic Bay, Republic of the Philippines. The injury was serious enough to mandate appellant's transfer to Naval Submarine Base Bangor, Silverdale, Washington, for further treatment. After a medical evaluation at Bremerton Naval Hospital, he presented a medical chit to his duty section supervisors which indicated that he was to report for physical therapy on Mondays, Wednesdays, and Fridays at 1330. Appellant was required to check out with his work-section supervisors prior to leaving, which he did each time from January through March 30, 1989. On March 30, appellant was placed on a course of "home therapy." This continued until April 13, at which time he was no longer required to undertake physical therapy of any form. Physical therapy was reinitiated after arthroscopic surgery on May 3, 1989.

Additional evidence in the record shows that appellant continued to leave his work section at 1300 on Mondays, Wednesdays, and Fridays after April 13. During the court-martial, government witnesses testified that appellant continued to check out with his supervisors during April; but that appellant had been informed that his therapy sessions were terminated; and that he failed to inform his immediate supervisors that he was not attending therapy after April 13.

More particularly, Petty Officer Seed and Petty Officer Taylor, appellant's duty supervisors, testified that they set up a control procedure to monitor appellant's physical therapy visits. At the scheduled times, appellant would routinely tell his supervisors, "I'm going to physical therapy as scheduled" (Seed) or "I'm going to my physical therapy" (Taylor). Appellant did not have to check back in with his duty section because his therapy usually ran until 1530 hours, the time the section secured. Both witnesses admitted that they had no memory of specific dates but that they did recall the practice was followed routinely during the entire period in question. Finally, Petty Officer Seed testified that "[w]e put out [the word to the troops] that they are to tell us ahead of time that they have the appointment and then schedule it on the blackboard." They are also "to notify us" when "a medical ... appointment [is] cancelled."

At the close of the Government's case, appellant moved to dismiss all the charges and specifications. The record indicates the action taken on civilian counsel (CC)'s motion as follows:

CC: At this time we would make a motion to dismiss all charges and specifi-

**2.** Special Court–Martial Supplemental Order No. 92–407 dated April 17, 1992, ordering the discharge executed, is a nullity.

**3.** This issue was more appropriately phrased before the Court of Military Review as follows:

I

THE SPECIFICATIONS UNDER CHARGE II DO NOT STATE ARTICLE 107, UCMJ, OFFENSES.

II

IF, *ARGUENDO*, SPECIFICATIONS 1, 3, 4, AND 7 OF CHARGE II DO STATE ARTICLE 107 OFFENSES, THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THESE OFFENSES....

cations against the accused, Milton Caballero. I would address the second charge and the seven specs and support it first by indicating that testimony is very clear that there is no specific recollection by any supervising petty officer that Caballero told them on the days charged that he was going to physical therapy that afternoon and I think that there has to be something more than a generalized sort of statement about it. If he is going to be charged with those specific dates, there has to be specific facts and circumstances which give rise to the charge on those dates and the Government has totally failed in its burden in that respect....

TC: Your Honor, the Government opposes the motion. First of all, it's not required that these witnesses have a specific recollection. They both testified that it was their standard practice that every Monday, Wednesday, and Friday, like clockwork, he would check out with them and that they believed he did so with one or the other on every one of the charged days. I feel that is evidence which meets the standard....

MJ: Okay, the standard for this motion is a motion for a finding of not guilty, as opposed to a motion to dismiss. There is some evidence on every element. The court will not comment on the quality of the evidence with respect to Charge II and the Specification [sic], but will note that it does rise to the standard of being some evidence on that point. The motion with respect to Charge II and the Specification [sic] is denied....

---

The granted issue, albeit somewhat awkwardly worded, questions the legal requirements for conviction under Article 107 and the sufficiency of the proof presented in this case to meet those requirements. In this regard, we initially note that Article 107 states:

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.

(Emphasis added.) Furthermore, we observe that appellant was found guilty of making the same false official statement on four different occasions, i.e., April 14, 19, 21 and 28, 1989. The specification for each of these dates states:

Specification 1: In that [appellant], did, at Naval Submarine Base, Bangor, on or about _____ 1989, with intent to deceive, make to Engineman First Class Gregory S. Seed, U.S. Navy, and Boiler Technician First Class Willard R. Taylor, U.S. Navy, an official statement to wit: That he was going to the physical therapy clinic at Naval Hospital, Bremerton at 1330, which statement was totally false, and was then known by the said Caballero to be so false.

█ Our first concern is whether a false official statement under Article 107 may be oral rather than written. Appellant argues more specifically that our case law has construed this statute to include only written statements or an "oral statement [which] does have some companion document in writing establishing or confirming what the oral statement was...." Final Brief at 5–6. He asserts that "[t]here is no reported case wherein a bare oral statement without more is sufficient legally to charge, much less sustain a Finding of Guilty, as a violation of this Art. 107." Id. at 6. We disagree.

We recognize, first of all, that Congress, not this Court, defines criminal conduct for the military justice system. See United States v. Teters, 37 MJ 370 (CMA 1993). Thus, regardless of the cases that come before this Court, it is the language of the statute that is controlling. Second, the clear language of Article 107 includes both "sig[ned] ... official document[s]" and the "mak[ing][of] any other ... official statement[s]." (Emphasis added.) Therefore, Congress expressly proscribed both written and oral statements in Article 107. Finally,

our case law has affirmed convictions for oral false official statements, even when not accompanied by a verifiable writing. *United States v. Prater,* 32 MJ 433 (CMA 1991); *United States v. Harrison,* 26 MJ 474 (CMA 1988); *United States v. Jackson,* 26 MJ 377 (CMA 1988); *United States v. Reams,* 9 USCMA 696, 26 CMR 476 (1958).

 Our second concern in this case is whether the oral statements allegedly made by appellant were official within the meaning of Article 107. In this regard, we note the following holding of the court below with approval:

> The substance of appellant's statements was that he was leaving his command and going to physical therapy at the Naval Hospital. As such, his statements related directly to his availability to perform his duties and his precise location on base. The statements were made to individuals whose duties included being responsible for appellant including knowing his whereabouts and duty status. Under these circumstances, we conclude that appellant's statements were clearly "official" and were made to individuals with a "duty to account" for the accused. See generally *United States v. Davenport,* 9 MJ 364 (CMA 1980).

Unpub. op. at 1.

 A false official statement includes all statements made in the line of military duty. The determination of whether a military duty existed in a particular case is based on the evidence of record. *See United States v. Jackson, supra* (holding that even if there is no independent duty to account, a servicemember who lies in an oral statement to a law enforcement agent conducting an investigation as part of his duties has violated Article 107); *see also United States v. Plascencia–Orozco,* 768 F.2d 1074 (9th Cir.1985) (holding that where defendant lied to a federal magistrate performing an administrative function, there was a violation of 18 USC § 1001. Appellant's suggestion that his statements, if made, were casual conversation and that he had no official duty to report to his military supervisors is most unpersuasive. It ignores the well-established concept of supervisory military authority and is contrary to the evidence of record that he was specifically required to check out with his work-station supervisors prior to attending physical therapy.

 Our final concern in this case is whether the prosecution proved beyond a reasonable doubt that appellant made the oral official statements alleged to be false. *See generally United States v. Blocker,* 32 MJ 281, 284 (CMA 1991). Appellant at trial denied that he told Petty Officers Seed and Taylor on the dates in question that he was "going to physical therapy." Those petty officers, however; substantially testified that beginning "sometime in February" 1989 appellant routinely checked out with one of them, telling them that he was going to his physical therapy and that he had an approved medical chit for such therapy filed and posted with them. Moreover, a third witness testified that he overheard appellant make such a statement in the office of these petty officers on April 14. Thus, the prosecution introduced circumstantial and, as to one offense, direct evidence from which the members could find that appellant actually made the purported statement on the dates alleged in the specifications. *See* RCM 918(c), Manual for Courts–Martial, United States, 1984.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.