**UNITED STATES, Appellee,**

v.

**Anthony T. HAGEE, Yeoman Third Class U.S. Navy, Appellant.**

No. 93–0134
CMR No. 92–0479.

U.S. Court of Military Appeals.

Argued May 19, 1993.
Argued Sept. 20, 1993.

For Appellant: *Lieutenant David P. Sheldon,* JAGC, USNR (argued); *Lieutenant Matthew L. Kronisch,* JAGC, USNR.

For Appellee: *Lieutenant E. Henriques,* JAGC, USNR (argued); *Colonel T.G. Hess,* USMC, *Lieutenant Commander S.A. Stallings,* JAGC, USN, *Lieutenant Ralph G. Stiehm,* JAGC, USNR (on brief).

*Opinion of the Court*

WISS., Judge:

Pursuant to pleas of guilty, a general court-martial convicted appellant of 7 specifications of various drug offenses, 3 specifications of conspiracy to commit many of those same offenses, and 2 specifications of intentionally signing a false official record, *see* Arts. 112a, 81, and 107, Uniform Code of Military Justice, 10 USC §§ 912a, 881, and 907, respectively. The military judge sentenced him to a bad-conduct discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. Under a pretrial agreement, the convening authority suspended the confinement in excess of 10 months for a period of 1 year; otherwise, though, he approved the trial results. The Court of Military Review affirmed in a unpublished opinion dated October 14, 1992.

■ The essence of the granted issue [1] asks whether a conviction for signing a

---

1. Specifically, the granted issue is as follows: WHETHER APPELLANT CAN BE PROSECUTED UNDER ARTICLE 107, UCMJ, FOR A FALSE OFFICIAL STATEMENT WHERE APPELLANT'S ACTIONS CONSISTED OF WRITING A FALSE SET OF TRAVEL ORDERS WHOSE INTENDED PURPOSE WAS TO TRICK A CIVILIAN LANDLORD INTO ALLOWING APPELLANT'S FRIENDS TO BREAK THEIR LEASES, AND, NEITHER THE UNITED STATES, NOR ANY AGENT OR ENTITY THEREOF WAS AN INTENDED OR ACTUAL VICTIM OF THE DECEPTION.

An issue substantively identical to a second granted issue here was decided in *United States v. Weiss,* 36 MJ 224 (CMA 1992), *cert. granted,* — U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). Accordingly, we decide that issue against appellant, *see United States v. Carpenter,* 37 MJ 291 (CMA 1993).

false official record under Article 107 will lie where a private party, not the United States, was the "victim" of the deceit. Undoubtedly, the answer is yes.[2]

Succinctly, the offenses relevant to this appeal arose from appellant's preparing a fake set of temporary additional duty (TAD) orders for each of two friends, signing the authorization block as "A.P. Hill." His friends, then, used the orders to demonstrate to their civilian landlord that they had been transferred so that they could break their housing leases. Without question, the orders were false.

■ Article 107, in issue here, provides:

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.

Nothing in the plain language of this statute limits its scope to deceptions in which the United States is the intended or actual direct victim. *Cf. United States v. Caballero*, 37 MJ 422 (CMA 1993) (plain language of Article 107 determines its scope). Appellant's reliance on *United States v. Ragins*, 11 MJ 42 (CMA 1981), as purportedly to the contrary, is ill-advised. Simply put, that decision does not even imply that the United States *has* to be the direct victim of a violation of this statute. *Cf.* para. 31c(2), Part IV, Manual for Courts–Martial, United States, 1984 ("The government *may*

*be* the victim of this offense." (Emphasis added.)).

In any event, the unequivocal answer to appellant's challenge may be found quite easily by resort to Federal courts' interpretation of the scope in this regard of 18 USC § 1001. That statute stipulates:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes or uses any false writing or document ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

It is entirely appropriate that we look to interpretations of 18 USC § 1001 for guidance here. As early as *United States v. Hutchins*, 5 USCMA 422, 426, 18 CMR 46, 50 (1955), this Court recognized the "analogy" between, and the common purpose of, Article 107 and 18 USC § 1001. Indeed, in *Ragins* itself, ironically relied upon by appellant, the Court recalled its observation in *Hutchins* and other cases and then reasoned, through that analogy: .

"Official," as used in Article 107, is thus the substantial equivalent of the phrase "in any matter within the jurisdiction of any department or agency of the United States," as found in 18 USC § 1001. Therefore, the relevancy of federal cases applying 18 USC § 1001 is obvious. *See United States v. Davenport*, 9 MJ 364 (CMA 1980).

11 MJ at 44. We reaffirmed these views in *United States v. Jackson*, 26 MJ 377 (CMA 1988), and we specifically stated that, "[i]n

---

2. We heard oral argument in this case on board the USS JOHN F. KENNEDY, at sea and underway in the Atlantic Ocean during air operations, on Wednesday, May 19, 1993, without objection from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under Law: The Supreme Court in American Life* 15–18 (1965); *see also* D. O'Brien, *Storm Center: The Supreme Court in American Politics* 78, 135–40 (2d ed. 1990). This procedure is similar to the well-established practice of the United States Court of Appeals for the Eighth Circuit which holds hearings at various law schools within its circuit. The United States Court of Military Appeals conducts a hearing such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates not only the operation of a Federal appellate court but also the quality and effectiveness of the criminal justice system of our Armed Services and Uniform Code of Military Justice (Arts. 1–146, 10 USC §§ 801–946, respectively). It is hoped that the thousands of students, service persons, military and civilian attorneys, and members of the American public who witness these hearings will realize that America is a democracy that can maintain an Armed Force instilled with the appropriate discipline to make it a world power and yet afford the members of that Armed Force a fair and impartial justice system which does provide the full protection of the Constitution of the United States and Federal law to its members.

view of the close relationship between Article 107 and 18 USC § 1001—a relationship often adverted to by this Court—we conclude that Article 107 should be interpreted in a manner consistent with *[United States v.] Rodgers* [, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984) ]." 26 MJ at 379.

Interestingly, the *Rodgers* opinion mentioned in *Jackson* pointedly recalled:

A predecessor provision [of 18 USC § 1001] punished false statements only when made "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States." Act of Oct. 23, 1918, ch. 194, 40 Stat. 1015. In 1934, Congress deleted the requirement of a specific purpose and enlarged the class of punishable false statements to include false statements made "in any matter within the jurisdiction of any department or agency of the United States." Act of June 18, 1934, ch. 587, 48 Stat. 996.

466 U.S. at 477–78, 104 S.Ct. at 1945. As to whether the new term "jurisdiction" should be broadly or narrowly interpreted, the Court decided:

The most natural, nontechnical reading of the statutory language is that it covers all matters confided to the authority of an agency or department.... A department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular situation.... Understood in this way, the phrase "within the jurisdiction" merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body.

*Id.* at 479, 104 S.Ct. at 1946.

This expansive view of the coverage of 18 USC § 1001 quite clearly includes within its ambit cases in which false papers that purport to be official documents of the United States are used to victimize private parties. The following passages from *United States v. Myers*, 131 F.Supp. 525, 531–32 (N.D.Cal.1955), well explains the reasoning:

It was on an official form printed by the United States Government, and, so far as could be told from examining it, was duly and regularly completed by an authorized official representing the United States Government. As it passed out of the hands of the defendant, it carried with it the full faith and credit which is given to documents of the United States Government.... Not only does Section 1001, of Title 18 of the United States Code, forbid falsification of the books, records, etc., maintained by the United States and the agencies and departments thereof, but it also makes it an offense for any government official to issue what purports to be an official document or report which is in fact false and fictitious. Under the statute, it is an offense for anyone to do any fraudulent act which is calculated to or does obstruct or impair governmental agencies and/or the value of their operations, documents and reports. *Haas v. Henkel*, 216 U.S. 462 [30 S.Ct. 249, 54 L.Ed. 569];.... It [the statute] is in effect designed to insure to the whole world, governmental employees and the general public alike, that any record, document, instrument or statement made by a governmental employee, great or small, in his official capacity and in the course of his official duties can be relied upon by all.

Section 1001 goes beyond the deceiving of the government, its officers, or its agents, and applies to reports and documents issued under governmental authority.... Again, in connection with this point, it must be repeated that the ultimate issues to be determined are that the document was issued within the jurisdiction of a department or agency of the United States; that the document was false; that the defendant knew it was false; and that it obstructed or impaired, or was calculated to obstruct or impair, the honest and faithful operation of some governmental agency and/or the value and integrity of a document or report issued by that governmental agency. From what has already been recited in this opinion, it seems patent that the

false Form 97 [U.S. Government Certificate of Release of Motor Vehicle], which the defendant prepared and passed on for public use, had the effect denounced by the statute....

*See also United States v. Gilliland,* 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), and *United States v. Stanford,* 589 F.2d 285 (7th Cir.1978) (18 USC § 1001 does not require that the false document be delivered to the United States or that the United States suffer a pecuniary loss from the deceit), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979).

On the basis of this reasoning, then, we have no hesitancy to hold that appellant's making and signing false official duty orders of the United States Navy for the purpose of using such official documents to deceive a private party who was entitled to rely on their integrity was a violation of Article 107. In such a situation, the United States is victimized by the threat to the integrity of its official documents and to the good-faith reliance to which its official documents are—and must be—entitled. *See United States v. Myers, supra.*

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.