**UNITED STATES, Appellee**

v.

**Jason E. SMITH, Private First Class U.S. Marine Corps, Appellant.**

No. 95–0615.

Crim. App. No. 94–0782.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 31, 1996.

Decided Aug. 30, 1996.

For Appellant: *Lieutenant C.J. McEntee, JAGC, USNR* (argued); *Lieutenant Bradford A. Bleier, JAGC, USNR.*

For Appellee: *Lieutenant David M. Harrison, JAGC, USNR* (argued); *Colonel C. William Dorman, USMC, Commander D.H. Myers, JAGC, USN* (on brief); *Colonel J. Composto, USMC,* and *Commander S.A. Stallings, JAGC, USN.*

*Opinion of the Court*

SULLIVAN, Judge:

On January 4, 1994, appellant was tried by a special court-martial composed of a military judge sitting alone at the Marine Corps Air Station, Beaufort, South Carolina. In accordance with his pleas, he was found guilty of making false official statements (3 specifications), larceny, forgery, dishonorable failure to pay just debts (8 specifications), and impersonating a noncommissioned officer, in violation of Articles 107, 121, 123, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 921, 923, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 100 days, forfeiture of $150.00 pay per month for 4 months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged on April 5, 1994. On December 5, 1994, the Court of Criminal Appeals affirmed the findings of guilty and the sentence in an unpublished memorandum.

This Court specified the following issue on July 7, 1995:

> WHETHER THE ORAL REPRESENTATIONS TO CIVILIANS ALLEGED UNDER CHARGE I AND ITS SPECIFICATIONS WERE MATTERS WITHIN THE JURISDICTION OF A DEPARTMENT OF THE UNITED STATES OR MERELY PERIPHERAL TO THE OFFICIAL FUNCTIONS OF THE GOVERNMENT AND THUS NOT OFFICIAL STATEMENTS UNDER ARTICLE 107.

We hold that appellant's pleas of guilty to making false official statements to a private

corporation for an automobile loan in violation of Article 107 were valid. *See United States v. Hagee*, 37 MJ 484 (CMA 1993); *United States v. Thorpe*, 9 USCMA 705, 26 CMR 485 (1958).

Appellant was charged, *inter alia*, with the following crimes under Article 107:

Specification 1: In that [appellant], on active duty, did, at Beaufort or Charleston, South Carolina, on or about sometime during June 1993 through July 1993, with intent to deceive, *make to Coastal Credit Corporation or Cook Auto Sales, an official statement, to wit: an employment verification letter,* listing a fictitious verifying disbursing officer, an erroneous present rank, an erroneous date entered service, an erroneous date of birth, and erroneous pay information; which statement was totally false, and was then known by the said Private First Class Smith to be so false.

Specification 2: In that [appellant] on active duty, did, at Beaufort or Charleston, South Carolina, on or about sometime during June 1993 through July 1993, with intent to deceive, *make to Coastal Credit Corporation or Cook Auto Sales, an official statement, to wit: a.leave and earnings statement* with all erroneous information except for his correct name and social security number which statement was totally false, and was then known by the said Private First Class Smith to be so false.

Specification 3: In that [appellant] on active duty, did, at Beaufort or Charleston, South Carolina, on or about sometime during June 1993 through July 1993, with intent to deceive, *make to Coastal Credit Corporation or Cook Auto Sales, an official statement, to wit: a U.S. Armed Forces Identification Card* (DD Form 2 MC) with an erroneous grade listed, which statement was totally false, and was then known by the said Private First Class Smith to be so false.

(Emphasis added.)

A stipulation of fact was admitted at appellant's trial. He acknowledged not only making the false documents noted above but also submitting those documents to support his loan request and orally telling the loan company personnel that the information on the documents was true. He also discussed his crimes with the military judge, as follows:

MJ: Okay. So, now in your possession you have the employment verification letter, the false ID Card with the false information with regards to your rank and your social security number, and you also have an altered LES [leave and earnings statement] belonging to Sergeant Holmes?

ACCUSED: Yes, sir.

MJ: And, with those documents in hand, did you then to [sic] go to Coastal Credit Corporation?

ACCUSED: Yes, sir.

MJ: Okay. Is that the first company you went to, or did you go to Cook Auto Sales?

ACCUSED: Sir, it was Cook Auto Sales, but Coastal Credit Corporation was the finance company that——

MJ: I understand. So, that's where the automobile was located, Cook Auto Sales?

ACCUSED: Yes, sir.

MJ: Okay. And what did you do when you got down to Cook Auto Sales?

ACCUSED: Sir, I presented them with the documents and——

MJ: That we just discussed?

ACCUSED: Yes, sir.

MJ: With all this false information?

ACCUSED: Yes, sir.

MJ: Okay.

ACCUSED: And I led them to believe that I was a Sergeant so that I could obtain the automobile loan, sir.

MJ: Did you represent to them, both by document and verbally, that you were a Sergeant in the United States Marine Corps?

ACCUSED: Yes, sir.

MJ: *So, you did it by verbal statement, as well as official statements, which* consisted of these documents we have discussed, the ID Card, the LES, and the employment verification letter?

ACCUSED: Yes, sir.

MJ: All right. Now, did you commit these acts sometime between the months of June and July of 1993?

ACCUSED: Yes, sir.

MJ: Okay. And, by these acts, I'm talking about specifications 1, 2, and 3 of Charge I.

ACCUSED: Yes, sir.

MJ: Okay. So, if I understand you correctly, you bogused the documents here on board the base and then took them down to Beaufort to Cook Auto Sales?

ACCUSED: Yes, sir.

MJ: Is that true?

ACCUSED: To Charleston, sir.

MJ: To Charleston?

ACCUSED: Yes, sir.

MJ: All right. And both verbally and by document represented to Cook Auto Sales that you were a Sergeant, E–5, in the United States Marine Corps?

ACCUSED: Yes, sir.

MJ: And other information, which was untrue and erroneous, and you did so with the specific intent to defraud Auto Sales. Is that what you're telling me?

ACCUSED: Yes, sir.

MJ: And obtained this automobile loan?

ACCUSED: Yes, sir.

MJ: Okay. Did you know at the time that you presented these documents to Cook Auto Sales that they were false, as you have described the documents to me?

ACCUSED: Yes, sir.

MJ: Okay. And did you do so with the specific intent to deceive Cook Auto Sales?

ACCUSED: Yes, sir.

MJ: Okay. Now, let's talk about the forged employment verification letter. You earlier told me that you prepared this in your own handwriting, presumably in its entirety, and then you forged the signature of Lieutenant Michael D. Schroeder. Is that true?

ACCUSED: Yes, sir.

MJ: Your Unit Legal Officer?

ACCUSED: Yes, sir.

MJ: Okay. Once you had prepared, or made, this document, did you physically hand the documents we have just discussed to a representative from Cook Auto Sales?

ACCUSED: Yes, sir.

MJ: Okay. And are you willing to admit that by using these documents and by presenting this forged signature of Lieutenant Schroeder on the employment verification letter that that document, if genuine, would impose a legal liability on someone, or some entity?

ACCUSED: Yes, sir.

MJ: Who, or, what entity?

ACCUSED: The finance company, sir.

MJ: Cook Auto Sales?

ACCUSED: Cook Auto Sales, sir.

MJ: And the finance company?

ACCUSED: Yes, sir.

MJ: Coastal Credit Corporation?

ACCUSED: Yes, sir.

MJ: Okay. So, did you then utter or hand the documents to the salesman from Cook Auto Sales, who, in turn, took these documents and applied for a loan through Coastal Credit Corporation? Is that true, if I'm understanding it correctly?

ACCUSED: Yes, sir.

MJ: Okay. And, again, and I've asked you this question before but at the time you presented these documents to Cook Auto Sales, did you then well know that each of these documents were false?

ACCUSED: Yes, sir.

MJ: Okay. And did you present these documents to obtain this automobile with the specific intent to defraud both Cook Auto Sales and Coastal Credit Corporation?

ACCUSED: Yes, sir, I did.

MJ: And did you commit this act of forgery sometime between June and July of 1993, 1 June and 31 July of those two months?

ACCUSED: Yes, sir.

———

At the outset we note that the specified issue in this case is too narrowly phrased. The specifications at issue in this case do not allege that appellant made false oral representations to a private corporation in a matter peripheral to the official function of the Government. Instead they expressly allege that he made a false employment verification letter; a false leave and earnings statement; and a false military identification card. They also allege, albeit in somewhat awkward fashion, that he presented these false military documents to a private corporation with the intent to deceive that corporation. Finally, in the stipulation of fact and in his guilty-plea responses, appellant also admitted making additional false oral representations to the private corporation that statements concerning his military rank and pay grade on the above documents were true.*

Appellant recognizes this discrepancy (Final Brief at 3 n. 1), yet he still argues that the alleged representations in the challenged specifications do not state an offense under Article 107. He suggests that representations of any type made to a private corporation by a servicemember for personal purposes are not "official" within the meaning of Article 107. *Cf. United States v. Ragins,* 11 MJ 42 (CMA 1981) (can be official statement if made for government purpose or if government accountable for representations).

Appellant more particularly asserts that our case law has equated the word "official" in Article 107 with the words "any matter within the jurisdiction of any department or agency of the United States" in 18 USC § 1001. *See United States v. Aronson,* 8 USCMA 525, 528, 25 CMR 29, 32 (1957). He then argues that the Supreme Court in *Hubbard v. United States,* — U.S. —, —, —, 115 S.Ct. 1754, 1757, 1765, 131 L.Ed.2d 779 (1995), interpreted this language in 18 USC § 1001 to mean "any matter in the jurisdiction of the *executive* branch of the federal government." Final Brief at 7 (emphasis added). Accordingly, he concludes

that since a private corporation is not affiliated with the Federal Government at all, appellant cannot be found guilty of making a false statement to it under Article 107.

The flaw in appellant's argument is that he ignores the broad protection this statute offers to government and military documents. He acknowledges the decision of this Court in *United States v. Hagee,* 37 MJ 484 (1993), which recognizes this purpose of the statute. However, he further cites the more recent decision of the Supreme Court in *Hubbard* as a superceding legal authority implicitly overruling our cases. We have examined that decision of the Supreme Court and conclude that appellant misconstrues it.

In this regard, we initially note that the *Hubbard* case concerned the proper construction of 18 USC § 1001, not Article 107. That federal civilian statute (§ 1001) stated at the time of this trial:

"Whoever, *in any matter within the jurisdiction of any department or agency of the United States* knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

(Emphasis added.) This Court has recognized this statute and federal civilian cases interpreting it as a source of guidance in interpreting Article 107. *See United States v. Hagee,* 37 MJ at 485; *United States v. Jackson,* 26 MJ 377 (CMA 1988). However, we have not suggested that our statute's unique language or our cases interpreting it can be ignored. *See United States v. Caballero,* 37 MJ 422, 424–25 (CMA 1993).

In addition, we do not read the Supreme Court decision in *Hubbard* to require overruling our decision in *United States v. Hagee, supra.* The particular issue in *Hubbard* was "a pair of unsworn, written responses" to a discovery motion filed in Bankruptcy Court

---

* The oral statements made by appellant were not necessary to constitute the offense of making a false official statement. *See United States v. Caballero,* 37 MJ 422, 424–25 (CMA 1993).

by a petitioner for bankruptcy. —— U.S. at ——, 115 S.Ct. at 1756. The Supreme Court had to decide whether falsehoods contained in these written responses were covered by 18 USC § 1001. It held "that a federal court" was "neither a 'department' nor 'agency' within the meaning of § 1001" (—— U.S. at ——, 115 S.Ct. at 1765), so submission of written responses to a court was not "within the jurisdiction of any department or agency of the United States" as prescribed by 18 USC § 1001. *Hubbard* did not decide whether submitting a document within the purview of the Executive Branch to a court is a violation of 18 USC § 1001. *See United States v. Myers,* 131 F.Supp. 525, 531–32 (N.D.Calif.1955), quoted in *United States v. Hagee,* 37 MJ at 486–87.

Turning to appellant's case, we note that he pleaded guilty to violating Article 107, which states:

§ 907. Art. 107. **False official statements**

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.

The broad question before us is whether appellant's guilty-plea responses support his pleas to making false *official* statements under Article 107. *See United States v. Osborne,* 9 USCMA 455, 26 CMR 235 (1958). Our particular concern is whether the official character of the false statement can be based on its issuing authority rather than on the person receiving it or the purpose for which it is made. *See United States v. Cummings,* 3 MJ 246, 247 (CMA 1977); *United States v. Arthur,* 8 USCMA 210, 24 CMR 20 (1957);

*cf. United States v. Ragins, supra.* We think so.

Long ago, this Court held that the material alteration of a military service document prepared by another servicemember was, by itself, a false "official statement" of the person altering the record. *United States v. Thorpe,* 9 USCMA 705, 26 CMR 485 (1958); *see also United States v. Singley,* 23 CMR 707, 711 (AFBR 1956) (official document is one "required by law, regulation, custom of the service, or because of the official nature of the duty being performed in its preparation"). Here appellant altered and presented to a civilian loan company two standard military documents, *i.e.,* a leave and earning statement and a military identification card. He also wrote a false employment verification letter purportedly signed by appellant's unit legal officer and submitted it to loan personnel. (We need not now speculate in this guilty-plea case as to that officer's duty to assist this soldier by writing it. *See United States v. Harrison,* 26 MJ 474, 476 (CMA 1988).) Under our case law, appellant's alteration and use of Federal Executive Branch documents or statements from Executive Branch officials clearly placed his conduct within the scope of Article 107. *See United States v. Hagee,* 37 MJ at 486; *United States v. Thorpe, supra; see also United States v. Myers, supra.* Nothing said in *Hubbard v. United States, supra,* a case not involving military documents or statements by military or government officials, conflicts with this holding.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.