**UNITED STATES**

v.

**Charles E. TEFFEAU, Jr., Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 9900322.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 20 Nov. 1997.

Decided 28 Sept. 2001.

LT Omar R. Lopez, JAGC, USNR, Appellate Defense Counsel.

Capt Danny R. Fields, USMC, Appellate Government Counsel.

Before LEO, Chief Judge, ANDERSON, Senior Judge, and FINNIE, Appellate Military Judge.

LEO, Chief Judge:

Contrary to his pleas, the appellant was convicted before officer members sitting as a general court-martial of conspiracy to violate a lawful general order, violation of a lawful general order, dereliction of duty, making a false official statement (five specifications), and obstruction of justice, in violation of Articles 81, 92, 107, and 134, UCMJ, 10 U.S.C. §§ 881, 892, 907, and 934. He was awarded a dishonorable discharge, confinement for six months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

We have examined the record of trial, the assignments of error and the Government's response. We find merit only in the appellant's claim that a sentence including a dishonorable discharge is inappropriately severe.

## I. False Official Statements

The appellant contends that the military judge erred in denying his motion to dismiss Specifications 1, 2, and 5 of Charge III because statements made to criminal investigators not acting on behalf of the military are not official statements within the meaning of Article 107, UCMJ. We disagree.

At trial, the appellant moved to dismiss these specifications for failure to state an offense. While conceding that our superior court has ruled that statements made to *military* criminal investigators are official statements under Article 107, UCMJ, the appellant argued that his statements to *civilian* law enforcement officials were not official statements under this article because the officials receiving the statements were not enforcing military law. Therefore, when he made the alleged statements, he was not acting in the line of duty, nor was he under any military duty or obligation to speak to them. According to the appellant, if these officials were not enforcing military law, the alleged statements could not have caused harm or prejudice to the armed forces. The military judge denied the motion, concluding that "the accused['s] statements were made in the line of duty because they directly related in the performance of his military duties as a Marine recruiter assigned to the local area wherein the alleged offenses took place." Record at 76. The military judge expressly adopted the prosecution's legal analysis. In its answer to the motion, the prosecution had maintained that the term *official* was not restricted to the party receiving the statement; rather "the 'official' character of a false statement can be based on its issuing authority **rather than on the person receiving it** or the purpose for which it is made." Appellate Exhibit II at 2 (citing

*United States v. Smith,* 44 M.J. 369, 373 (1996)(emphasis added)).

■ The military judge's ruling on what constitutes an "official statement" under Article 107, UCMJ, is a question of law to be reviewed *de novo.* *See United States v. Falk,* 50 M.J. 385, 390 (1999)(partially withdrawn on grant of reconsideration); *United States v. Hockings,* 129 F.3d 1069, 1070 (9th Cir.1997). We begin our analysis with a review of the elements under Article 107, UCMJ, for the offense of making a false official statement:

(1) That the accused signed a certain official document or made a certain official statement;

(2) That the document or statement was false in certain particulars;

(3) That the accused knew it to be false at the time of signing it or making it; and

(4) That the false document or statement was made with the intent to deceive.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 31(b). The Manual states, "Official documents and official statements include all documents and statements made *in the line of duty.*" MCM, Part IV, ¶ 31c(1)(emphasis added). The term "official" for purposes of making a false official statement essentially means any matter within the jurisdiction of any Federal department or agency. *United States v. Jackson,* 26 M.J. 377, 378 (C.M.A.1988)(citing *United States v. Aronson,* 8 U.S.C.M.A. 525, 528, 25 C.M.R. 29, 32, 1957 WL 4643 (1957) and 18 U.S.C. § 1001).

At the time of the offenses, the appellant was a recruiter assigned to the Marine recruiting substation in Wichita, Kansas. The duties of a recruiter included maintaining weekly contact with recruits in the Delayed Entry Program. On 3 January 1997, the appellant advised his supervisor, Gunnery Sergeant Quilty, that he and Staff Sergeant Finch were proceeding to the nearby town of Winfield to meet with two such recruits, Jennifer Keely and Jennifer Toner. The prosecution introduced evidence that the meeting was a get-together to go drinking in celebration of Ms. Keely's departure for Marine Corps boot camp the following week. All of the parties met at Jennifer Toner's house, where the appellant, Finch, and Keely consumed alcohol. Shortly thereafter, the three of them left Toner's house for Winfield Lake to continue their celebration. The appellant reportedly had a case of beer in the trunk of the Government vehicle that he was driving. Finch accompanied Keely in her vehicle, while the appellant followed in his Government vehicle. Upon returning from Winfield Lake, Keely and Finch got into a single-car accident that killed Keely and injured Finch. Keely's blood-alcohol content [BAC] was determined to be 0.07; Finch's BAC was 0.14. Due to the fatality and the alcohol-involvement, police officers from the nearby town of Winfield conducted an extensive investigation into the circumstances surrounding the accident and were aware of the appellant's military status at the time they interviewed him. The Commanding Officer of the 8th Marine Corps District directed a command investigation into the accident, as well. The appellant made several false statements, including three statements to Winfield police officers, concerning the circumstances surrounding the accident as the police and command investigators attempted to determine what happened.

■ Citing *United States v. Johnson,* 39 M.J. 1033, 1035–36 (A.C.M.R.1994), the appellant argues on appeal that Article 107, UCMJ, like its Federal counterpart, 18 U.S.C. § 1001, is intended only to protect departments and agencies of the United States from deceptive practices. Since the Winfield police officers were not military investigators or acting on behalf of military investigators, he maintains the false statements did not pervert or corrupt the functions of any military department or agency. We do not believe the decision of the Army court in *Johnson* reflects the more expansive view currently held by our superior court in *Smith,* 44 M.J. at 373, and *United States v. Hagee,* 37 M.J. 484, 485 (C.M.A.1993). *Smith* and *Hagee* appear to reject any rigid rule that only a military department or agency can be the victim of a false official statement. In *Hagee,* the court had no difficulty finding that the use of falsified Government documents to deceive a private party was a

violation of Article 107, UCMJ, because of "the threat to the integrity of [ ] official [U.S.] documents and to the good-faith reliance to which its official documents are—and must be—entitled." *Hagee*, 37 M.J. at 487; *see also Smith*, 44 M.J. at 373. We see no reason to treat information provided in the line of duty by service members any differently than the information provided in official U.S. documents. The detriment to Government interests is substantially the same. Private parties and local officials should be able to rely with equal confidence on the integrity of both. Accordingly, we hold that an intentionally deceptive statement made by a service member in the line of duty to a private party or a local official is within the scope of Article 107, UCMJ.

■ As for whether or not the appellant's statements were made in the line of duty, the record establishes that the appellant was on official U.S. Government business at the time he and Staff Sergeant Finch visited with Ms. Keely and Ms. Toner on 3 January 1997. The accident that occurred in the course of this visit involved both a fellow recruiter and a delayed-entry recruit. When the Winfield police officers interviewed the appellant, they were aware of his military status. Therefore, any statements the appellant decided to provide in response to questioning by the Winfield police investigators about the events preceding the fatal auto accident would touch inevitably upon his official duties at the time as the investigators attempted to determine the cause of the accident. Depending on what he said, his responses could potentially result in Government liability for the accident, as well. Under these circumstances, we have no difficulty finding that the appellant's statements were made in the line of duty and that they constituted official statements within the meaning of Article 107, UCMJ. MCM, Part IV, ¶ 31c(1). *See United States v. Ragins*, 11 M.J. 42, 44–45 (C.M.A.1981)(noting that statement can be official if made for Government purpose or if Government held accountable for representations).

■ The appellant also contends that the evidence is legally insufficient for each of the false official statement offenses (Specifications 1 through 5 of Charge III). Citing MCM, Part IV, ¶ 31c(6)(a),[1] he now argues that he had no independent duty or obligation to speak at the time he was interrogated. Therefore, his statements were not "official" within the meaning of Article 107, UCMJ. We disagree.

Our superior court has held that statements made to law enforcement agents are official under Article 107, UCMJ. *United States v. Prater*, 32 M.J. 433, 438 (C.M.A. 1991); *see also Jackson*, 26 M.J. at 379 (construing Article 107, UCMJ, in a manner consistent with the Supreme Court's construction of 18 U.S.C. § 1001 in *United States v. Rodgers*, 466 U.S. 475, 480, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984)) Therefore, MCM, Part IV, ¶ 31c(6)(a) is no longer an accurate statement of the law. *United States v. Morris*, 47 M.J. 695, 701 (N.M.Ct.Crim.App.1997); *United States v. Watkins*, 35 M.J. 709, 714 (N.M.C.M.R.1992). Upon reviewing the record, we find the evidence for each of the specifications to be legally sufficient. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

## II. Variance

The appellant contends that Charge II and the specification thereunder (violation of a lawful general order) must be dismissed due to a fatal variance between the alleged offense and the findings. We disagree.

■ A variance exists "when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge." *United States v. Allen*, 50 M.J. 84, 86 (1999). The alleged offense in the specification under Charge II reads as follows:

In that Staff Sergeant Charles E. Teffeau Jr., U.S. Marine Corps, Marine Corps Recruiting Station, Oklahoma City, Oklahoma, Eighth Marine Corps District, New Orleans, Louisiana, did, at Winfield, Kansas, on or about 3 January 1997, fail to

---

1. "A statement made by an accused or suspect during an interrogation is not an official statement within the meaning of the article if that person did not have an independent duty or obligation to speak." MCM, Part IV, ¶ 31c(6)(a).

obey a lawful general order, to wit: paragraph 6d, of Marine Corps Recruit Depot, San Diego, Order 1100.4a, dated 21 May 1992 by wrongfully providing alcohol to Jennifer Keely, a person enrolled in the delayed entry program.

Charge Sheet. The members found the appellant guilty of the specification, excepting the words *"paragraph 6d"* and *"wrongfully providing alcohol to Jennifer Keely"* and substituting therefor the words *"paragraph 6"* and *"by wrongfully engaging in and encouraging and otherwise seeking a nonprofessional, personal relationship with Jennifer Keely."* Record at 494–95 (emphasis added).[2]

The prosecution's theory on this particular charge was that the appellant brought a case of beer to Winfield Lake and provided some of the beer to Ms. Keely, which she consumed just prior to the auto accident that resulted in her death. Record at 451–52. The prosecution provided a chronology of the events leading up to the fatal accident. It included testimony from Jennifer Toner that the appellant had been drinking alcoholic beverages with Ms. Keely and Staff Sergeant Finch, the other recruiter involved in this incident, at Toner's home earlier that day, before the three of them left for Winfield Lake.[3] In his argument on findings, the trial defense counsel disputed the prosecution's assertion that the appellant was present at Winfield Lake with Staff Sergeant Finch and Ms. Keely and that the appellant had provided beer to Ms. Keely. Record at 466–68. But, he did not dispute the prosecution's evidence that the appellant had been drinking with Ms. Keely and Staff Sergeant Finch at Toner's home.

 We begin our analysis with the well-established rule that the general findings on a specification of a charge may be made by exceptions and substitutions, so long

as they do not "substantially change the nature of the [charged] offense." RULE FOR COURTS-MARTIAL 918(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). Guilty findings that differ substantially from the charged offense "violate due process." *United States v. Evans,* 37 M.J. 468, 472 (C.M.A.1993)(citing *Dunn v. United States,* 442 U.S. 100, 106, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)); *see also United States v. Wray,* 17 M.J. 375 (C.M.A.1984)(stating that "an accused cannot be convicted of a crime different from that charged"). In considering a variance claim, however, our superior court long ago made clear that "even where there is a variance in fact, the critical question is one of prejudice." *United States v. Lee,* 1 M.J. 15, 16 (C.M.A.1975). The court recently provided the following guidance: " 'To prevail on a fatal-variance claim, [the] appellant must show that the variance was material and that it substantially prejudiced him.' " *Allen,* 50 M.J. at 86 (quoting *United States v. Hunt,* 37 M.J. 344, 347 (C.M.A.1993)). Additionally, "to show prejudice, [the] appellant must show *both* that he was misled by the language of Charge II, such that he was unable adequately to prepare for trial, and that the variance puts him at risk of another prosecution for the same offense." *Id.* (emphasis added).

 The appellant argues that he was convicted of an offense substantially different from the charged offense. According to the appellant, "the members made a finding by exceptions and substitutions which changed the essence of the facts alleged in the charged offense." Appellant's Brief of 27 Oct 1999 at 3. He claims that this variance is material and that the charge should be dismissed. The Government's response adds credence to the appellant's claim regarding the materiality of the variance. In its brief,

---

2. Paragraph 6 and subparagraph 6d of Marine Corps Recruit Depot, San Diego, Order 1100.4a, dated 21 May 1992, respectively state:

6. [ ] Recruiting personnel are forbidden to engage in, encourage, solicit, or otherwise seek nonprofessional personal relationships with members of the DEP [Delayed Entry Program] or other prospective recruits. The following conduct is specifically prohibited:

. . . .

d. Providing alcoholic beverages, either directly or through the use of a third party, for consumption, to any member of the DEP or prospective recruit applicants under any circumstances, unless previously approved by the applicable District CO [Commanding Officer].

3. Toner declined to join the others at Winfield Lake.

the Government argues that "the members were certainly convinced that [the] appellant violated the Order [against engaging in, encouraging, or otherwise seeking nonprofessional personal relationships with members of the DEP or other prospective recruits] by consuming alcohol with Jennifer Keely and Jennifer Toner, both members of the DEP." Government's Answer of 5 Jul 2000 at 9. Thus, the Government seeks to anchor the guilty findings on a related, but materially different, incident than the one originally charged in the specification. For that reason, we find that the appellant has satisfied the first prong of the two-part test for a fatal variance claim. He has failed, however, to satisfy the second prong because he has not shown how the variance substantially prejudiced him. It is not enough to rely solely on the claim that the guilty finding is materially different from the charged offense. Although the appellant cites as support the decisions in *Evans,* 37 M.J. at 471–72, and *Wray,* 17 M.J. at 376, wherein our superior court found a fatal variance in each of these cases without a showing of prejudice, we believe the court now requires that substantial prejudice be shown. *See Allen,* 50 M.J. at 86. Accordingly, we find the appellant has failed to meet his burden on this assignment of error.

### III. Unreasonable Multiplication of Charges

The appellant contends that the guilty findings in Specifications 1 through 5 of Charge III (making a false official statement) constitute an unreasonable multiplication of charges. We disagree.

■■■ In deciding whether the charges have been *unreasonably* multiplied, we consider whether the appellant raised the claim at trial. In addition, we consider whether the specifications are aimed at distinctly separate criminal acts, whether they misrepresent or exaggerate the appellant's criminality, whether they unreasonably increase his exposure to punishment, and whether they suggest prosecutorial abuse of discretion in the drafting of the specifications. *United States v. Quiroz,* 55 M.J. 334, 338–39 (2001).

■■■ The appellant argues that the charges are unreasonably multiplied because he reiterated essentially the same false statement to several different people. The similarity of the statements is not determinative of whether they constitute an unreasonable multiplication of charges. Rather, we examine when each statement was made and to whom that statement was made. The fact that the statements were made at different times and, in some cases, to different individuals is sufficient in our minds to make each false statement a discrete offense.

We also note that the appellant was originally charged with 18 specifications of making a false official statement, in violation of Article 107, UCMJ. By the time of trial, they had been reduced to 12 specifications. At trial, the prosecution dismissed on its own motion one of the specifications. Record at 19. Thereafter, with the concurrence of the prosecution, the military judge consolidated the remaining 11 specifications into five, each specification reflecting either a different date or a different recipient for the ·false statement. *Id.* The trial defense counsel raised no objection. *Id.* Accordingly, while the number of offenses on the Charge Sheet in the beginning may have been suggestive of prosecutorial overcharging, the subsequent actions taken by the military judge and the prosecution were sufficient to dispel that concern. As a result, we find that the remaining charges have not misrepresented or exaggerated the appellant's criminality, nor have they unreasonably increased the appellant's potential exposure to punishment.

### IV. Conclusion

■■■ The appellant also contends that a sentence including a dishonorable discharge is inappropriately severe. We have carefully considered the nature and seriousness of the offenses, the circumstances surrounding them, and the character of the appellant, including his record of military service. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982); *United States v. Rojas,* 15 M.J. 902, 919 (N.M.C.M.R.1983). We find that a dishonorable discharge is inappropriately severe. .

Lastly, after considering the two remaining assignments of error, we find them to be without merit. Of particular note, we find

that the evidence is legally and factually sufficient for the guilty findings on Charge II and its specification. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Turner,* 25 M.J. at 325.

Although not raised as an assignment of error, we noticed that the convening authority's court-martial promulgating order of 10 December 1998 erroneously states that the appellant was guilty of Specification 3 of Charge III, as charged, and guilty of Specification 2 of Charge III, excepting the words, "I have followed an ambulance to the hospital and stopped at the first phone I came to on the way into town," and "after 1500 on 3 January '97 there was a case of beer in the trunk of the government vehicle he was operating." In fact, the actual findings are the reverse. The members found the appellant guilty of Specification 3 of Charge III, excepting the words noted above, and guilty of Specification 2 of Charge III, as charged. *See* Record at 495. We, therefore, direct that the supplemental promulgating order correctly reflect the findings for Specifications 2 and 3 of Charge III.

We affirm the findings (as corrected) and only so much of the sentence as includes a bad-conduct discharge, six months confinement, and reduction to the lowest enlisted pay grade.

Senior Judge ANDERSON and Judge FINNIE concur.